William A. ELMER and HTH, Inc., Plaintiffs–Appellees,

v.

ICC FABRICATING, INC., Defendant–Appellant,

and

Take–Out Express, Inc., Defendant.

No. 94–1503.

United States Court of Appeals, Federal Circuit.

Oct. 10, 1995.

Herbert L. Allen, Allen, Dyer, Doppelt, Franjola & Milbrath, P.A., Orlando, Florida, argued for plaintiffs-appellees.

Ernie L. Brooks, Brooks & Kushman P.C., Southfield, Michigan, argued for defendant-appellant. With him on the brief was Frank A. Angileri.

Before NIES, LOURIE, and CLEVENGER, Circuit Judges.

LOURIE, Circuit Judge.

ICC Fabricating, Inc. ("ICC") appeals from the judgment of the United States District Court for the Middle District of Florida entered pursuant to a jury verdict holding ICC liable to William A. Elmer and HTH, Inc. (collectively "HTH") for utility patent infringement, design patent infringement, trade dress infringement, and state common law unfair competition. The court denied ICC's post-trial motion for judgment as a

matter of law ("JMOL") or, alternatively, for a new trial. *Elmer v. ICC Fabricating, Inc.*, No. 92-379-CIV-ORL-18, 1994 WL 523888 (M.D.Fla. Aug. 1, 1994). On appeal, ICC challenges the court's order denying JMOL on the issues of utility patent validity, design patent infringement, trade dress infringement, and unfair competition. ICC does not contest the verdict of utility patent infringement. Because the jury's verdict of utility patent validity was supported by substantial evidence, but its verdicts of design patent infringement, trade dress infringement, and unfair competition were not, we affirm-in-part and reverse-in-part.

## BACKGROUND

HTH is the exclusive licensee of U.S. Patents 5,084,994 and Des. 290,620, directed to vehicle-mounted advertising signs. HTH sued ICC alleging utility and design patent infringement, trade dress infringement under section 43(a) of the Lanham Act, and unfair competition under Florida common law. ICC counterclaimed for a declaration that the asserted patents are invalid. After a ten-day jury trial, the jury returned a verdict for HTH finding that claims 1, 3, 5, 6, 8–12, 16, and 17 of the '994 patent are not invalid and were infringed, the '620 design patent is not invalid and was infringed, the trade dress of HTH's "Window Wing" sign is protectable and was infringed by ICC, and that ICC violated Florida unfair competition law.[1] Subsequently, the jury awarded HTH $240,-130.00 as damages for ICC's infringement of the '994 patent, $38,900.00 as damages for ICC's infringement of the '620 patent, and $942,361.00 in damages for ICC's trade dress infringement and unfair competition. In addition, the jury found that ICC's unfair competition had been willful, wanton, or reckless and thus awarded HTH $1 million in punitive damages. Based upon the jury's findings, the court entered a permanent injunction. The court denied ICC's alternative motion for JMOL or a new trial on the ground that credible evidence introduced during trial supports the verdicts. This appeal followed.

---

1. The jury's verdict combined, without differentiation, a finding of trade dress infringement under the Lanham Act with a finding of unfair competition under Florida common law.

## DISCUSSION

■ On appeal, ICC contends that the district court erred in denying JMOL on the issues of utility patent validity, design patent infringement, trade dress infringement, and unfair competition. Judgment as a matter of law is appropriate when "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue...." Fed.R.Civ.P. 50(a)(1). We review *de novo* a district court's decision on a JMOL motion by reapplying the JMOL standard. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 975, 34 USPQ2d 1321, 1326 (Fed.Cir. 1995) (in banc). In so doing, we will not disturb a jury's factual findings unless the party moving for JMOL shows that the findings were not supported by substantial evidence. *Id.* We review the legal standards that the jury applied in reaching its verdict to determine whether they were correct. *Id.*

### A. *Utility Patent Validity*

■ ICC first argues that the court erred in denying its motion for JMOL that the '994 patent is invalid under 35 U.S.C. § 102(b). ICC contends that it proved by clear and convincing evidence that, more than one year before the filing date of the application that matured into the '994 patent, a sign anticipating the asserted claims was built by an individual named Kevin Billow and used publicly by his employees at a Domino's Pizza store in Farmington, Michigan. HTH responds, *inter alia*, that the jury reasonably could have concluded that ICC failed to establish that the prior art sign met each limitation of the asserted claims. We agree with HTH that substantial evidence supports the jury's determination that ICC did not prove the '994 patent to be invalid.

■ A patent is invalid if the subject matter of the claims was "in public use ... more than one year prior to the date of the application for patent in the United States." 35 U.S.C. § 102(b) (1988). Section 102(b) requires that in order for prior art to invalidate a claim, it must be anticipating, *i.e.*, contain all of the limitations of the relevant claim. However, a non-anticipating public use more than one year before the claim's effective filing date may render the claim invalid for obviousness under 35 U.S.C. § 103. *Millik-*

*en Research Corp. v. Dan River, Inc.*, 739 F.2d 587, 222 USPQ 571 (Fed.Cir.1984).

■ In analyzing validity, "[t]he first step involves the proper interpretation of the claims. The second step involves determining whether the limitations of the claims as properly interpreted are met by the prior art." *Beachcombers, Int'l, Inc. v. Wilde-Wood Creative Prods., Inc.*, 31 F.3d 1154, 1160, 31 USPQ2d 1653, 1658 (Fed.Cir.1994). Claim interpretation is a question of law. *Markman*, 52 F.3d at 979, 34 USPQ2d at 1329. Whether the alleged prior art met the claim limitations is a factual question.

Claim 1 is illustrative of the claims at issue:

1. Apparatus for displaying an advertisement above the roof of a vehicle, comprising:

a vehicle having a wide window which extends generally vertically and approximately parallel to the direction of vehicle travel;

an aerodynamic member having a leading edge, a trailing edge and side surfaces between the edges, the member having a longitudinal dimension between the edges and lateral dimensions between the side surfaces, the longitudinal dimension being substantially greater than the lateral dimensions;

means including *an upstanding brace means* for releasably attaching the aerodynamic member to the vehicle window with the side surfaces extending generally vertically, the attaching means including a window mount having a portion dimensioned to pass across the top and engage the vehicle window;

the upstanding brace means rigidly joined with the window mount at spaced points and joined with the aerodynamic member at spaced points so as to prevent rotation of the aerodynamic member and maintain the longitudinal dimension extending in a direction generally parallel with the direction of vehicle travel; and wherein

at least one of the side surfaces defines an area to which an advertising medium can be affixed [emphasis added].

At trial, ICC urged a narrow claim interpretation. ICC took the position that the "up-

standing brace means" recited in the asserted claims is limited, pursuant to 35 U.S.C. § 112, ¶ 6, to the structure disclosed in the specification of the '994 patent, namely, a vertical brace that extends into and through the sign body. The '994 patent does not describe any other brace structure or suggest any possible equivalent structure.

Consistent with this claim interpretation, ICC's own expert, Herb Furman, testified no fewer than three times that the prior art Billow sign lacked an "upstanding brace means." Furman testified that "in the Kevin Billow sign, Exhibit 24, I don't find any upstanding brace means." He later stated, "Again, the upstanding brace means ... I don't find it in the Billow sign, Exhibit 24...." He then repeated that "[i]n the Kevin Billow sign, Exhibit 24, ... I don't find any upstanding brace...." Furman's testimony was based on the fact that the braces in the Billow sign did not extend into and through the sign body. The jury reasonably could have concluded from Furman's testimony, which constitutes substantial evidence, that the Billow sign did not meet the "upstanding brace means" limitation and

thus did not anticipate the claims. *See Kloster Speedsteel AB v. Crucible, Inc.*, 793 F.2d 1565, 1571, 230 USPQ 81, 84 (Fed.Cir.1986) ("[A]bsence from the [prior art] reference of any claimed element negates anticipation."), *cert. denied*, 479 U.S. 1034, 107 S.Ct. 882, 93 L.Ed.2d 836 (1987).[2] ICC's contrary position on appeal does not change the record below, including the testimony that ICC itself produced.

Furthermore, ICC does not point to any evidence in the record showing that the asserted claims would have been obvious over the Billow sign to one of ordinary skill in the relevant art at the time of the '994 invention. Thus, we have no basis to question the jury's rejection of ICC's § 102/103 invalidity counterclaim. Accordingly, because the jury's validity determination was supported by substantial evidence, we affirm the district court's denial of ICC's motion for JMOL.

**B.** *Design Patent Infringement*

■ ICC next argues that the court erred in denying its motion for JMOL that it did not infringe the '620 design patent. Figure 1 of the '620 patent illustrates HTH's patented design:

2. In addition, the jury reasonably could have found that the Billow sign did not meet other claim limitations at issue, such as the requirement in claim 9 that the upstanding brace extend through and be rigidly joined with the window mount and the requirement in claim 10 for a suction cup that is joined both to the lower portion of the upstanding brace and to the window mount.

ICC's sign, alleged to infringe the '620 patent, has the following ornamental appearance:

Illustrative of the prior art is a sign having the following ornamental appearance:

ICC contends that the '620 patented design differs from the prior art sign shown above (and ICC's own sign) in two respects: the protrusion that extends above the upper surface of the '620 sign, and the triangular vertical ribs that extend along the '620 sign's side edges. ICC asserts that HTH did not prove that ICC appropriated these novel ornamental features and therefore that there was no infringement of the '620 patent as a matter of law.

In response, HTH contends that both the upper protrusion and the vertical ribs are functional, not ornamental, features, as de-

scribed in its utility patent directed to the sign.[3] Thus, in HTH's view, ICC's argument is irrelevant because it mischaracterizes the novel ornamental features of the '620 design. *See Lee v. Dayton–Hudson Corp.,* 838 F.2d 1186, 1188, 5 USPQ2d 1625, 1627 (Fed.Cir. 1988) ("[I]t is the non-functional, design aspects that are pertinent to determinations of infringement."). HTH asserts that ICC's device appropriates the novel ornamental features that distinguish its patented design from the prior art, including the patented sign's flat, extended horizontal flange; its rounded flange corners; its rippled flange edge; its increased vertical dimension compared to the prior art sign; and its flat, smooth finish. HTH contends that the jury reasonably could have found that ICC appropriated these novel ornamental features. HTH also points out that it introduced testimony that ICC used HTH's sign as a mold to make its own sign.

■■■ A design patent protects the non-functional aspects of an ornamental design as shown in the patent. *KeyStone Retaining Wall Sys., Inc. v. Westrock, Inc.,* 997 F.2d 1444, 1450, 27 USPQ2d 1297, 1302 (Fed.Cir. 1993). Determining whether a design patent claim has been infringed requires, first, as with utility patents, that the claim be properly construed to determine its meaning and scope. *See Markman,* 52 F.3d at 976, 34 USPQ2d at 1326. Second, the claim as properly construed must be compared to the accused design to determine whether there has been infringement. *Id.* In this second step, the patented and accused designs are compared for overall visual similarity:

> [I]f, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other.

*Gorham Co. v. White,* 81 U.S. (14 Wall.) 511, 528, 20 L.Ed. 731 (1871). In analyzing visual similarity, "[w]here ... a [patented] design is composed of functional as well as ornamental

features, to prove infringement a patent owner must establish that an ordinary person would be deceived by reason of the common features in the claimed and accused designs which are ornamental." *Read Corp. v. Portec, Inc.,* 970 F.2d 816, 825, 23 USPQ2d 1426, 1434 (Fed.Cir.1992). In addition, the accused design must appropriate the novel ornamental features of the patented design that distinguish it from the prior art. *Oakley, Inc. v. International Tropic–Cal, Inc.,* 923 F.2d 167, 169, 17 USPQ2d 1401, 1403 (Fed.Cir.1991).

■■ Turning first to claim construction, the '620 patent claims, with emphasis added, the "ornamental design for a vehicle top sign holder, *as shown and described*" in the patent. Significantly, the only design "shown and described" in the '620 patent is a vehicle sign that includes, *inter alia,* triangular vertical ribs and an upper protrusion. Each of the patent's six drawing figures shows a sign having these features, which give the sign a distinctive ornamental appearance. No other design is disclosed or suggested in the '620 patent. If, as HTH now contends, the vertical ribs and upper protrusion were functional, not ornamental, features, HTH could have omitted these features from its patent application drawings. HTH did not do so, however, and thus effectively limited the scope of its patent claim by including those features in it. *See In re Mann,* 861 F.2d 1581, 1582, 8 USPQ2d 2030, 2031 (Fed.Cir.1988) ("Design patents have almost no scope. The claim at bar, as in all design cases, is limited to what is shown in the application drawings."). Thus, because no other design is disclosed in the '620 patent, we interpret the claim as being limited to a design that includes among its ornamental features triangular vertical ribs and an upper protrusion.

Next, we must visually compare the patented and accused designs to determine whether the jury reasonably could have concluded that they are substantially similar. The claimed design, as indicated above, is limited to a vehicle sign having, *inter alia,* triangular vertical ribs and an upper protrusion. ICC's sign lacks these ornamental fea-

---

**3.** U.S. Patent 4,667,428, the utility patent corresponding to HTH's '620 sign, indicates that the upper protrusion "is molded into [the] top surface ... to accept a light assembly" and that the

vertical ribs "add bracing and rigidity to the three dimensional structure formed by [the] sides [of the sign]." Col. 3, 11. 53–54 and 28–30.

tures and has a substantially different overall ornamental appearance. Furthermore, while, as HTH contends, ICC may have appropriated certain other ornamental features that distinguish the claimed design from the prior art, "unless the *Gorham* standard for finding infringement is met by the accused [device] there is no need for detailed analysis in terms of the prior art." *Lee,* 838 F.2d at 1189 n. 4, 5 USPQ2d at 1627 n. 4. Under *Gorham,* the focus is on the *overall* ornamental appearance of the claimed design, not selected ornamental features. The overall ornamental appearance of the '620 design, as shown in the patent drawings, is too different from ICC's design for an ordinary observer to be induced into purchasing ICC's product thinking it was HTH's design.

Thus, because no reasonable jury could have concluded that the overall visual appearance of the claimed design is substantially similar to the accused design, the jury verdict of design patent infringement was not supported by substantial evidence. We therefore reverse the district court's denial of judgment of noninfringement as a matter of law, together with its award of damages and pre-judgment interest for design patent infringement.

## C. *Trade Dress Infringement and Unfair Competition*

ICC further argues that the court erred in denying its motion for JMOL that it did not infringe HTH's asserted trade dress or violate Florida unfair competition law. ICC contends that HTH's trade dress is primarily functional and thus not protectable. HTH responds that substantial evidence supports the jury's implicit finding that the overall trade dress of HTH's sign is primarily nonfunctional.

■■■ Because trade dress issues are not unique to the exclusive jurisdiction of the Federal Circuit, we defer to the law of the regional circuit in which the district court sits. *Imagineering, Inc. v. Van Klassens, Inc.,* 53 F.3d 1260, 1263, 34 USPQ2d 1526, 1528 (Fed.Cir.1995). Thus, Eleventh Circuit law applies in this case.

■■■ Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (1994), creates a federal cause of action for trade dress infringement. *Original Appalachian Artworks, Inc. v. Toy Loft, Inc.,* 684 F.2d 821, 831 (11th Cir.1982). Trade dress "involves the total image of a product and may include features such as size, shape, color or color combinations, texture, graphics, or even particular sales techniques." *John H. Harland Co. v. Clarke Checks, Inc.,* 711 F.2d 966, 980, 219 USPQ 515, 528 (11th Cir.1983). While "trade dress" historically referred to product packaging and labeling, modern definitions encompass the shape and design of a product itself. *Id.; see also* 1 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 7.25[5] (3d ed. 1994) ("McCarthy").

■■■ To prevail on a trade dress infringement claim under section 43(a), a plaintiff in the Eleventh Circuit must prove three elements: (1) its trade dress is inherently distinctive or has acquired secondary meaning, (2) its trade dress is primarily nonfunctional, and (3) the defendant's trade dress is confusingly similar. *AmBrit, Inc. v. Kraft, Inc.,* 812 F.2d 1531, 1535 (11th Cir.1986), *cert. denied,* 481 U.S. 1041, 107 S.Ct. 1983, 95 L.Ed.2d 822 (1987). In the Eleventh Circuit, the plaintiff has the burden of proving nonfunctionality. *Id. Cf.* McCarthy § 7.26[3][d] (discussing split in the circuits concerning burden of proving functionality/nonfunctionality). Functionality is a question of fact, subject to the substantial evidence standard of review on appeal. *John H. Harland,* 711 F.2d at 982, 219 USPQ at 529–30.

■■■ As the Supreme Court recently stated in *Qualitex Co. v. Jacobson Products Co.,* — U.S. ——, 115 S.Ct. 1300, 131 L.Ed.2d 248 (1995):

"In general terms, a product feature is functional," and cannot serve as a trademark, "if it is essential to the use or purpose of the article or if it affects the cost or quality of the article," that is, if exclusive use of the feature would put competitors at a significant non-reputation-related disadvantage.

*Qualitex,* —— U.S. at ——, 115 S.Ct. at 1304 (quoting *Inwood Lab., Inc. v. Ives Lab., Inc.,* 456 U.S. 844, 850 n. 10, 102 S.Ct. 2182, 2187 n. 10, 72 L.Ed.2d 606 (1982)). The doctrine also embodies the related principle that trademark or trade dress law may not be used to secure patent-like protection in useful product features. As the Court observed in *Qualitex:*

The functionality doctrine prevents trademark law, which seeks to promote competition by protecting a firm's reputation, from instead inhibiting legitimate competition by allowing a producer to control a useful product feature. It is the province of patent law, not trademark law, to encourage invention by granting inventors a monopoly over new product designs or functions for a limited time, 35 U.S.C. §§ 154, 173, after which competitors are free to use the innovation. If a product's functional features could be used as trademarks, however, a monopoly over such features could be obtained without regard to whether they qualify as patents and could be extended forever (because trademarks may be renewed in perpetuity).

*Qualitex,* —— U.S. at ——, 115 S.Ct. at 1304; *see also Keene Corp. v. Paraflex Indus., Inc.,* 653 F.2d 822, 824, 211 USPQ 201, 203 (3d Cir.1981) ("The purpose of the rule precluding trademark significance for functional features is to prevent the grant of a perpetual monopoly to features which cannot be patented. . . . Products or features which have not qualified for patent protection but which are functional are in the public domain, and are fair game for imitation and copying.").

■ At trial, HTH asserted a protectable trade dress in "a rigid, two-sided aerodynamic sign body with a clear plastic window mounting member, and with the two sides extending generally vertically and generally parallel with the direction of the vehicle travel when mounted upon a vehicle side window." *Elmer,* slip op. at 4. The trial court, in granting its injunction, accepted that concept. HTH's '994 utility patent, however, indicates that this purported trade dress is composed entirely of useful product features. According to the specification at col. 2, l. 67 through col. 3, l. 1, the two-sided aerodynamic sign body provides "an aerodynamic configuration which has a minimum of wind drag when mounted upon a vehicle." In addition, "[t]he window mount is formed of a generally transparent plastic material, in order to permit the driver to see through the window mount." Col. 1, ll. 56–59. An opaque window mount would be unacceptable because it would block the driver's vision when the sign is in use on a vehicle. Finally, the sign must extend generally vertically and parallel to the vehicle so that the advertising on the sign may be read by the public when the sign is in use. These features are "functional" because they provide useful advantages, and affording HTH exclusive rights in them would put competitors at a "significant non-reputation-related disadvantage." *Qualitex,* —— U.S. at ——, 115 S.Ct. at 1304.

HTH concedes that the individual elements of its asserted trade dress are functional. However, HTH contends that, when combined, the *overall* appearance of these functional elements yields a nonfunctional, and thus protectable, trade dress. HTH further contends that there were a variety of sign designs available to ICC that were not confusingly similar to the overall appearance of its sign. The availability of alternative designs, HTH argues, shows that the asserted trade dress is nonfunctional.

The Eleventh Circuit has held that protectable trade dress may be found in an overall product appearance even when the product itself is functional or includes certain functional features. *AmBrit,* 812 F.2d at 1538 ("That individual elements of packaging are functional does not . . . render the package as a whole unprotectible."). In *AmBrit,* for example, the court affirmed a district court's finding that a foil wrapper design for an ice cream bar was primarily nonfunctional and thus protectable as trade dress. The wrapper's "square size, bright coloring, pebbled texture, [and] polar bear and sunburst images" rendered the wrapper nonfunctional because while "[t]he actual wrapper may [have been] functional, . . . its appearance [was] not." *AmBrit,* 812 F.2d at 1536, 1538. Similarly, in *John H. Harland,* the court affirmed a jury finding that the trade dress of a checkbook/carrying case was primarily nonfunctional. The court noted that, while certain features of the checkbook were functional, the jury reasonably could have found that other features were not, such as a decorative box around lines used to record information in the checkbook and the design and color of the carrying case. *John H. Harland,* 711 F.2d at 983–84, 219 USPQ at 531.

In contrast, HTH defined its trade dress to include only useful product features. To our knowledge, the Eleventh Circuit has not held protectable a trade dress that encom-

passed only useful product features. HTH did not show at trial, nor does it now explain, how combining the elements of its asserted trade dress renders the trade dress as a whole primarily nonfunctional. The '994 patent suggests the contrary, that the overall shape of HTH's sign is needed to provide a vehicle-mounted advertising sign with improved aerodynamics, driver visibility, and advertisement visibility. Furthermore, while evidence of alternative designs may be relevant, it was HTH's burden to prove that the availability of alternative designs substantially eliminates any competitive need for the features that HTH seeks to protect via trade dress. *See Inwood Lab.*, 456 U.S. at 850 n. 10, 102 S.Ct. at 2187 n. 10. HTH made no such showing. HTH did not show, for example, that competitors in the relevant market have no functional need for aerodynamic versus nonaerodynamic designs. We are thus persuaded that there was no evidentiary basis upon which the jury reasonably could have relied in finding that the overall design of HTH's sign is primarily nonfunctional.

■ Moreover, patent law, not trade dress law, is the principal means for providing exclusive rights in useful product features. As the Court recognized in *Qualitex*, extending trademark/trade dress law to protect functional features might create perpetual, patent-like rights in unpatented or unpatentable items. Indeed, the district court's broad, functionally-defined injunction in this case has exactly that effect: it prevents ICC, indefinitely, from using any rigid, two-sided aerodynamic sign with a clear plastic window mount, the two sides extending vertically and parallel to the direction of vehicle travel. The injunction, in effect, broadens claim 1 of the '994 patent by protecting products lacking some of the limitations of the claim. HTH cannot, however, bypass the statutory requirements of the patent laws and obtain broadened patent protection under the guise of trade dress law.

Furthermore, once the '994 patent expires, the public will be entitled to practice the invention claimed in the patent. *See Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 165, 109 S.Ct. 971, 985, 103 L.Ed.2d 118 (1989) ("For almost 100 years it has been well established that in the case of an expired patent, the federal patent laws *do* create a federal right to 'copy and use.' "); *see also Kellogg Co. v. National Biscuit Co.*, 305 U.S. 111, 59 S.Ct. 109, 83 L.Ed. 73 (1938). Enforcing a "trade dress" right defined, as it was here, to be essentially coextensive with, and in fact broader than, claim 1 of the '994 patent would frustrate that right because trade dress protection may last indefinitely and thus competitors could not effectively "copy and use" the invention after the patent expires. If the asserted trade dress had been narrowly defined to cover only one of the many product configurations within the scope of the claim, one might have a different case. In such case, upon expiration of the '994 patent competitors would be free to practice the '994 invention; they could sell "aerodynamic" vehicle-mounted signs. They simply could not choose a product configuration that would be confusingly similar to the trade dress of HTH's product. Here, however, the "trade dress" was broadly defined to be essentially coextensive with, and in fact broader than, the patent claim, and enforcing such a trade dress would effectively extend the life of the patent.

For these reasons, we are persuaded that HTH's asserted trade dress was primarily functional and thus unprotectable. The jury's contrary finding was not supported by substantial evidence. Because HTH's asserted trade dress was not protectable, we need not address whether the jury reasonably could have found that HTH proved the other elements of a trade dress claim. The district court's decision denying JMOL of noninfringement is therefore reversed. The court's judgment awarding compensatory damages and pre-judgment interest pursuant to the jury verdict of trade dress infringement is likewise reversed.

Finally, ICC argues that HTH's Florida common law unfair competition claim cannot stand because, as presented to the jury, the claim depended upon a showing of protectable trade dress. HTH makes no effort to defend the unfair competition verdict apart from its arguments concerning its Lanham Act claim. We agree with ICC that, because HTH's trade dress was not protectable, the jury's verdict of unfair competition was not supported by substantial evidence. We therefore also reverse the district court's decision denying JMOL that ICC did not violate Florida unfair competition law, together

with its award of compensatory and punitive damages for unfair competition.

award of damages and pre-judgment interest.

## CONCLUSION

We affirm the district court's denial of ICC's motion for JMOL on the issue of utility patent validity. We reverse the court's denial of ICC's motion for JMOL on the issues of design patent infringement, trade dress infringement, and common law unfair competition, together with the corresponding

## COSTS

No costs.

AFFIRMED–IN–PART AND RE-VERSED–IN–PART.