THE ROCKPORT COMPANY, INC., Plaintiff,

v.

DEER STAGS, INC., Defendant.

No. 98 Civ. 4663(JFK).

United States District Court, S.D. New York.

Sept. 16, 1999.

Sterne, Kessler, Goldstein & Fox P.L.L.C., Washington, DC, David K.S. Cornwell, Tracy–Gene G. Durkin, Teresa Uliva Medler, Sills Cummis Radin Tischman Epstein & Gross, P.C., New York City, Mark S. Olinsky, Richard H. Epstein, of counsel, for Plaintiff.

Pennie & Edmonds, New York City, Brian D. Coggio, Laurie B. Epstein, of counsel, for Defendant.

## OPINION and ORDER

KEENAN, District Judge.

This is an action seeking redress for alleged patent infringement under the United States Patent Laws, 35 U.S.C. § 271. This Court has jurisdiction pursuant to 28 U.S.C. § 1338(a).

Before the Court are the parties' cross-motions for partial summary judgment, pursuant to Fed.R.Civ.P. 56, on the question of whether Defendant Deer Stags, Inc. infringed U.S. Patent Design No. 380, 594 with the manufacture and sale of its "Destination" shoe. Also before the Court is Defendant's motion to strike evidence included in Plaintiff's cross-motion for summary judgment. For the reasons discussed below, the Court grants Plaintiff's motion for partial summary judgment, denies Defendant's motion for partial summary judgment, and denies Defendant's motion to strike evidence.

### Background

Plaintiff the Rockport Company, Inc. ("Rockport"), is a corporation organized and existing under the laws of the Commonwealth of Massachusetts. Rockport designs and sells casual, dress, and performance footwear, including walking shoes, and related products. Rockport has been awarded more than 60 U.S. Patents to date. Mr. Peter von Conta is the named inventor on at least thirteen of these patents. *See* Decl. of Jerri A. Williams ("Williams Decl.") ¶ 3. In 1995, Peter von Conta created an ornamental design for a shoe upper, which was given the model name "ProWalker® World Tour." *See id.* ¶ 5. A shoe upper consists of the portion of the shoe above the sole of the shoe. Since 1996, over 3 million pairs of Rockport's ProWalker® World Tour shoes have been sold throughout the United States and worldwide. *See id.* ¶ 6. On March 11, 1996, Rockport applied to the U.S. Patent and Trademark Office for a design patent protecting the ornamental appearance of the ProWalker® World Tour shoe. The U.S. Patent and Trademark Office granted Peter von Conta U.S. Design Patent No. 380,594 ("the '594 patent"), entitled "Shoe Upper," on July 8, 1997. *See* Durkin Decl., Exh. A. Rockport is the owner, by assignment, of the '594 patent.

Defendant Deer Stags, Inc. ("Deer Stags") is a New York corporation that is in the business of importing and selling shoes. In late 1996, Deer Stags began the development of its "Destination" model shoe (the "Destination Shoe").[1] *See* Decl.

---

1. Deer Stags alleges that it created its Destination Shoe by combining several elements

of Howard K. Weiss ("Weiss Decl.") ¶ 2. In late 1997, Rockport became aware that Deer Stage was offering to sell in its 1997 catalog a model of its Destination Shoe that Rockport alleges was a copy of Rockport's ProWalker ® World Tour shoe. *See* Williams Decl. ¶ 9. Rockport sent a cease and desist letter to Deer Stags on November 17, 1997, demanding that Deer Stags cease all activity involving its Destination Shoe and any shoe which infringed Rockport's patent. *See id.* ¶ 9. On January 23, 1998, Rockport filed a Complaint against Deer Stags alleging that the Destination Shoe infringed the '594 patent. Deer Stags informed Rockport that the shoe in question was erroneously pictured in its 1997 catalog and that it was a prototype that was never intended for sale. *See* Weiss Decl. ¶¶ 7–8. That picture was not included in Deer Stags's 1998 catalog. On February 3, 1998, Rockport filed an Amended Complaint adding an allegation that a modified version of the Destination Shoe that Deer Stags first offered for sale in its Fall 1998 Footwear Catalog likewise infringed the '594 patent. *See* Williams Decl. ¶ 11; Durkin Decl. ¶ 6. Both parties agree that this motion pertains only to the alleged infringement of the '594 Patent by the Destination Shoe model that Deer Stags actually sold. *See* Mem. of Law in Supp. of Deer Stags's Mot. for Summ. J. at 2; Rockport's Opp. to Deer Stags's 56.1 Stmt. ¶ 5.

Deer Stags and Rockport are now cross-moving for partial summary judgment on the question of whether Deer Stags's Destination Shoe infringes Rockport's '594 patent.

### Discussion
#### Defendant's Motion to Strike Evidence

■ Deer Stags moves to strike paragraphs 13–18 of the Declaration of Jerri A. Williams (the "Williams Declaration"), which Rockport submitted in support of its cross-motion for partial summary judgment. Deer Stags claims that paragraphs 13–18 should be stricken for failure to comply with the requirements of Fed. R.Civ.P. 56(e). Rule 56(e) requires that "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." A court may "strike portions of an affidavit that are not based upon the affiant's personal knowledge, contain inadmissible hearsay or make generalized and conclusory statements." *Hollander v. American Cyanamid Co.*, 172 F.3d 192, 198 (2d Cir.1999). Deer Stags alleges that there is no indication that the statements in the Williams Declaration were based on Ms. Williams personal knowledge of shoe design and that "[i]t is doubtful whether Ms. Williams position as Legal Manager of Intellectual Property could provide her with the competence necessary to assert the allegations contained in paragraphs 13–18." *See* Mem. Of Law in Supp. of Def.'s Motion to Strike at 2. The Court disagrees.

■ Ms. Williams is the Legal Manager of Intellectual Property for Rockport and is responsible for protection and enforcement of Rockport's intellectual property. *See* Williams Decl. ¶ 1. Paragraphs 13–15 of the Williams Declaration relate to the overall similarity of Deer Stags's Destination shoe and the Rockport '594 patent. Paragraphs 16–18 specify the novel features of the '594 patent. Although Ms. Williams does not expressly state in her declaration that the information contained in paragraphs 13–18 was based on her personal knowledge, Rule 56(e) does not

found in its 1995 "Biltmore" shoe, its 1996 "Bronco" shoe, and earlier shoe uppers. *See* Deer Stags's 56.1 Stmt. ¶ 8. As Rockport points out, however, the Vice–President and General Counsel of Deer Stags, Howard K. Weiss, acknowledged during his deposition that he sent a Rockport ProWalker ® World Tour shoe to his overseas manufacturer along with a shoe from another company as part of the "developmental process" of creating the Destination Shoe. *See* Durkin Decl., Exh. B ("Weiss Dep.") at 76–78.

require such an express statement. *See Hochberg v. Howlett*, No. 92 Civ. 1822, 1992 WL 373631, at *4 (S.D.N.Y. Dec. 1, 1992). Personal knowledge may be inferred from the affidavit itself. *See id.* In this instance, Ms. Williams' position as Legal Manager of Intellectual Property at Rockport appears to qualify her to attest to the factual allegations contained in paragraphs 13–18 of the Williams Declaration. Moreover, Ms. Williams submitted a Supplemental Declaration which clarifies that the "declaration of November 30, 1998[was] based on [her] personal knowledge of [the '594 patent]; the references considered during the examination of the '594 patent; the pleadings and discovery produced in this litigation; and my overall general experience as an employee at Rockport since 1996." *See* Supp. Decl. of Jerri A. Williams at ¶ 3. As the *Hochberg* Court noted, a supplementary affidavit affirming that an original affidavit was based on personal knowledge "is sufficient to cure any defects that may have existed in the original affidavits." 1992 WL 373631, at *4. As a result, Deer Stags's motion to strike paragraphs 13–18 of the Williams Declaration is denied.

Summary Judgment Standards

A motion for summary judgment may be granted under Fed.R.Civ.P. 56 if the entire record demonstrates that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir.), *cert. denied*, —— U.S. ——, 118 S.Ct. 2075, 141 L.Ed.2d 151 (1998). In considering a motion for summary judgment, a court "must view the evidence in the light most favorable to the party against whom summary judgment is sought and must draw all reasonable inferences in [its] favor." *See L.B. Foster Co. v. America Piles, Inc.*, 138 F.3d 81, 87 (2d Cir.1998) (citing *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348,

1356, 89 L.Ed.2d 538 (1986)). Although the movant initially bears the burden of showing that there are no genuine issues of material fact, once such a showing is made, the opposing party must "set forth specific facts showing that there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 256, 106 S.Ct. 2505. "The nonmoving party may not rely on mere conclusory statements nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful." *D'Amico*, 132 F.3d at 149. To defeat a motion for summary judgment, the party opposing the motion must produce sufficient evidence to permit a reasonable jury to return a verdict in its favor. *See Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir.1998) (citing *Liberty Lobby*, 477 U.S. at 252, 106 S.Ct. at 2512).

■ The Federal Circuit has stated that "summary judgment is as appropriate in a patent case as in any other." *See Avia Group Int'l, Inc. v. L.A. Gear California, Inc.*, 853 F.2d 1557, 1561 (Fed.Cir.1988) (citations omitted). This applies to design patent cases as well as to utility patent cases. *See OddzOn Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396 (Fed.Cir.1997); *Aerogroup Int'l Inc. v. Marlboro Footworks, Ltd.*, No. 96 Civ. 2717(DLC), 1997 WL 83395 (S.D.N.Y. February 27, 1997).

Design Patent Infringement

■ A design patent, issued pursuant to 35 U.S.C. § 171, "protects the nonfunctional aspects of an ornamental design as shown in the patent." *Elmer v. ICC Fabricating, Inc.*, 67 F.3d 1571, 1577 (Fed. Cir.1995). Design patents are narrow in scope. *See In re Mann*, 861 F.2d 1581, 1582 (Fed.Cir.1988); *see also Elmer*, 67 F.3d at 1577; *In re Reid Harvey*, 12 F.3d 1061, 1064 (Fed.Cir.1993). A design patent's claim is limited to what is shown in the application drawings. *See In re Mann*, 861 F.2d at 1582; *see also Elmer*, 67 F.3d at 1577; *In re Reid Harvey*, 12 F.3d at 1064. Infringement is defined as

the "unauthorized manufacture or sale of 'the patented design, or any colorable imitation thereof.'" *See L.A. Gear. Inc. v. Thom McAn Shoe Company*, 988 F.2d 1117, 1124 (Fed.Cir.1993) (quoting 35 U.S.C. § 289). Determining whether a design patent claim has been infringed requires a two-step analysis. First, the Court must construe the patent claim to determine its meaning and scope as a matter of law. *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir.1995) (in banc), *aff'd*, 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). Because a design patent only protects the novel, ornamental features of the patented design, "[w]here a design contains both functional and non-functional elements, the scope of the claim must be construed in order to identify the non-functional aspects of the design as shown in the patent." *See OddzOn*, 122 F.3d at 1405 (citing *Lee v. Dayton–Hudson Corp.*, 838 F.2d 1186, 1188 (Fed.Cir.1988)).

█ Second, the properly construed patent claim must be compared to the accused design to determine whether there has been infringement. *See Markman*, 52 F.3d at 976. In this second step, the fact-finder must compare the patented and accused designs to determine whether the accused design is substantially similar in appearance to the patented design. The test for infringement does not compare the commercial embodiments of the two products. Rather, the allegedly infringing product is compared only to the patented design. *See Sun Hill Indus., Inc. v. Easter Unlimited, Inc.*, 48 F.3d 1193, 1196 (Fed.Cir.1995); *Herbko Int'l Inc. v. Gemmy Indus., Corp.*, 916 F.Supp. 322, 325 (S.D.N.Y.1996). The test for substantial similarity, as originally stated by the Supreme Court in *Gorham v. White*, 81 U.S. (14 Wall.) 511, 20 L.Ed. 731 (1871), is as follows:

[I]f, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is

such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other.

81 U.S. at 528; *see Elmer*, 67 F.3d at 1577. In evaluating a claim of design patent infringement, a fact-finder must consider "the ornamental aspects of the design as a whole and not merely isolated portions of the patented design." *See Braun Inc. v. Dynamics Corp. of America*, 975 F.2d 815, 820 (Fed.Cir.1992); *see also OddzOn*, 122 F.3d at 1405 ("It is the appearance of a design as a whole which is controlling in determining infringement."). The accused design does not have to be identical to the patented design for infringement to be found. *See OddzOn*, 122 F.3d at 1405; *Braun*, 975 F.2d at 820.

In addition to overall similarity of designs, the accused design "must appropriate the novelty in the patented device which distinguishes it from the prior art." *See Sun Hill*, 48 F.3d at 1197 (quoting *Litton Sys., Inc. v. Whirlpool Corp.*, 728 F.2d 1423, 1444 (Fed.Cir.1984)). Both substantial similarity and appropriation of the "point of novelty" must be proved for an infringement claim to succeed. *Sun Hill*, 48 F.3d at 1197; *Aerogroup Int'l*, 1997 WL 83395, at *2.

### 1. The '594 Patent

█ As an initial matter, the parties dispute whether the Court should consider Rockport's Canadian Industrial Design Registration No. 79,808, which pertains to the ProWalker ® World Tour shoe, in construing the '594 patent. A court "may, in its discretion, receive extrinsic evidence in order 'to aid the court in coming to a correct conclusion' as to the 'true meaning of the language employed' in the patent." *Markman*, 52 F.3d at 980 (quoting *Seymour v. Osborne*, 78 U.S. (11 Wall.) 516, 546, 20 L.Ed. 33 (1871)). Extrinsic evidence is "all evidence external to the patent and prosecution history." *See id.* Extrinsic evidence "may be used only to help the court come to the proper understand-

ing of the claims; it may not be used to vary or contradict the claim language." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1585 (Fed.Cir.1996). In this case, the '594 patent claim is "[t]he ornamental design for a shoe upper, as shown and described." The Court finds that it may consider Rockport's Canadian Industrial Design Registration No. 79,808, but is not required to rely on it.

The '594 patent is composed of figures showing the shoe upper from various perspectives. *See* Durkin Decl., Exh. A.[2] The four principle drawings show (1) the side view of the shoe upper, (2) the view of the top of the shoe upper, (3) the view of front of the shoe upper, and (4) the view of the rear of the shoe upper.

The side view of the shoe upper includes an elongated heel counter, or a band that wraps around the rear of the shoe and is located on both sides of the shoe. A double row of stitching follows the outline of the heel counter. An elongated mud guard, or shallow band, with a double row of stitching extends from both ends of the heel counter and wraps around the front of the shoe in one piece.[3] The mud guard curves slightly first in an upward direction and then in a downward direction along each side of the shoe upper. There are five eyelets on each side of an eyestay which is integrated into the side of the shoe upper. The top eyelet is placed within a narrow padded ankle collar which extends from the rear of the shoe. The ankle collar is raised at the rear portion of

the collar and there is a seam on the right and left sides of the ankle collar on either side of the raised portion. In addition, there is a double layer of the shoe upper above the mud guard on each side of the shoe that extends from the bottom of the eyestay to a stitch line which extends from the heel counter to between the second and third eyelets. There is a small gap between the ankle collar and the heel counter from the side view.

The drawings of the top and front of the shoe upper show a thin curved panel connecting the bottom-most portions of the eyestay. The panel has a half moon pattern stitched on it. The view of the rear of the shoe upper shows a heel tab or an extension of the rear-most portion of the heel counter which intersects with the raised portion of the ankle collar. There is a stitch line where the heel counter intersects the ankle collar.

## 2. Substantial Similarity

 The Destination Shoe must now be compared to the '594 patent to determine if there is an issue of fact regarding the substantial similarity of the Destination Shoe to the '594 patent.[4]

The Destination Shoe appears identical to the '594 patent in the following ways: the Destination shoe also has an elongated heel counter that wraps around the rear of the shoe, is located on both sides of the shoe, and has a double row of stitching that follows the outline of the heel counter.

---

2. A copy of the '594 patent is attached to this Opinion and Order as Appendix A.

3. Deer Stags alleges that the stitching and the heel counter are functional and, therefore, not ornamental. However, "[w]hen there are several ways to achieve the function of an article of manufacture, the design of the article is more likely to serve a primarily ornamental [as opposed to functional] purpose." *L.A. Gear*, 988 F.2d at 1123. In this case, Deer Stags concedes that there are several methods of stitching, although it argues that "there are not many stitching methods which can achieve the same functional result, other than by the method performed in the '594

patent." *See* Def.'s Mem. of Law at 13. Moreover, in the exhibits Deer Stags has provided to the Court in support of its motion, there are a number of pictures of shoes without a heel counter or with heel counters that have a different shape than the one shown in the '594 patent. *See, e.g.*, Weiss Decl., Exhs. K, N, O, Q, R, S and U. As a result, the Court finds that the heel counter and the stitching on the '594 patent are primarily ornamental and non-functional.

4. Pictures of the side, top, front, and rear views of the Destination Shoe are attached as Appendix B.

The Destination Shoe also has five eyelets along each side of an eyestay with the top eyelet included in a narrow ankle collar. The Destination Shoe also has a thin curved panel connecting the bottom portions of the eyestay with a half-moon pattern stitched on the panel. The ankle collar of the Destination Shoe is also raised at the rear of the collar with a seam on the right and left sides of the raised portion. The side view of the Destination Shoe also shows a gap between the ankle collar and the heel counter. In addition, the Destination Shoe also has a heel tab which intersects with the raised portion of the ankle collar and a stitch line where the two intersect.

The Court finds that the Destination Shoe differs visually from the '594 patent in only two respects.[5] First, the mud guard of the Destination Shoe is broken into several parts instead of the '594 patents's one-piece mud guard. There is one unbroken piece which extends from approximately the midpoint of one side of the shoe upper to the midpoint of the shoe upper on the other side. A smaller piece on each side then connects the unbroken piece with the elongated heel counter. Even with the Destination Shoe mud guard broken into several pieces, however, the combined pieces form a shape similar to the shape of the '594 patent mud guard in that the smaller piece on each side curves first in an upward direction and then a downward direction along each side of the shoe upper.

The second difference is that the Destination Shoe does not have the double layer of shoe extending from the bottom of the eyestay to between the second and third eyelets. Nonetheless, the Destination Shoe has a seam extending from the heel counter to between the second and third eyelets—in the same place as the seam shown in the '594 patent—and a parallel

seam which extends to between the third and fourth eyelets.

As set out above, in determining whether the accused design is substantially similar to the patented design, "[u]nder *Gorham*, the focus is on the overall ornamental appearance of the claimed design, not selected ornamental features." *Elmer*, 67 F.3d at 1577. In this case, the Court finds that the Destination Shoe appears nearly identical to the '594 patent and concludes that there is no material issue of fact regarding the substantial similarity of the overall visual appearance of the Destination Shoe to the '594 patent.

### 3. Point of Novelty

Rockport acknowledges that no one element of the '594 patent is novel and claims instead that it is the overall combination of elements found in the '594 patent drawings that is novel. Rockport further points to a combination of four elements in particular as novel: (1) the elongated heel counter, (2) the mud guard that extends in one piece from either side of the heel counter, (3) the narrow padded ankle collar wherein the topmost eyelet is formed, and (4) an eyestay that is integrated with the shoe's side panels. A unique combination of known elements can satisfy the point of novelty requirement. As the Federal Circuit stated in *L.A. Gear*:

> The district court found that all of the elements of the design of the '081 patent were known, but that these particular elements had not previously been combined into a single shoe design. A reconstruction of known elements does not invalidate a design patent, absent some basis whereby a designer of ordinary skill would be led to create this particular design.

---

5. Deer Stags claims that the Destination Shoe also differs from the '594 patent because the Deer Stags' mark is displayed about the Destination Shoe to distinguish it from other walking shoes. This distinction is irrelevant, however, because "[d]esign patent infringement relates solely to the patented design, and does not ... allow [for] avoidance of infringement by labeling." *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1125 (Fed.Cir.1993).

988 F.2d at 1124. In this case, Deer Stags argues that Rockport fails to satisfy the point of novelty requirement for two reasons.

First, Deer Stags claims that if the overall combination of the elements is the novel aspect of the patent, each element of the patented design must be present in the accused design to find infringement. Deer Stags contends that its Destination Shoe cannot infringe the '594 patent because the Destination Shoe has a different mud guard than the '594 patent. The Court disagrees. The Federal Circuit has held that "minor differences between a patented design and an accused article's design cannot, and shall not, prevent a finding of infringement." *Litton Sys., Inc. v. Whirlpool Corp.*, 728 F.2d 1423, 1444 (Fed.Cir. 1984); *see also Braun*, 975 F.2d at 820 ("[P]atent infringement can be found for a design that is not identical to the patented design."). As discussed above, although the mud guard of the Destination Shoe is broken into several pieces, it nonetheless has the same general shape and appearance as the mud guard shown in the '594 patent. This difference does not prevent a finding of infringement.

Second, Deer Stags claims that the combination of elements in the '594 patent is not novel because "[a]lthough this exact combination of these five elements may not appear in any of the twenty-one patents of other footwear catalogs considered by the U.S. Patent and Trademark Office during the examination of the '594 patent, at least four of the shoes cited in the prior art contain four of the five elements." *See* Reply Mem. of Deer Stags at 12 (emphasis in original). Deer Stags has attached pictures of the four shoes it alleges contain the combined elements of the '594 patent:

the Dexter "Walkmocs," *see* Weiss Decl. Exh. J, the Stacey Adams "Arden Last," *see id.* Exh. R, the C & J "Bianchini" Patent, *see id.* Exh. L, and the Rockport "Cintron" patent. *See id.* Exh. O.[6]

Although these four shoes contain elements found in the '594 patent, the Court notes that the individual elements differ in appearance from those in the '594 patent and each of the four shoes has a different overall visual appearance than the '594 patent. For example, although the Dexter Walkmocs have a one piece mud guard, the mud guard on the Walkmocs is attached by a single row of very wide and spread-out stitching as opposed to the double row of small, tight stitching on the '594 patent. In addition, although the Dexter Walkmocs have an ankle collar, it is wider than the ankle collar of the '594 patent, does not extend as far forward from the heel, and does not extend to encompass the top eyelet as the '594 patent does. The elements of the other three shoes likewise differ in appearance from the elements contained in the '594 patent. Thus, the Court rejects Deer Stags' argument that the combination of elements found in the '594 patent fails to satisfy the point of novelty requirement because the same combination appears in prior art.

Because the Court finds that there is no genuine issue of material fact regarding the Destination Shoe's infringement of the '594 patent, partial summary judgment is appropriate for Rockport.[7]

### Conclusion

For the reasons discussed above, the Court grants Rockport's motion for partial

---

**6.** Pictures of the Walkmocs and Arden Last shoes and the Bianchini and Cintron Patents are attached as Appendix C.

**7.** The Court notes that design patent infringement is a question of fact which a patentee must prove by a preponderance of the evidence. *See OddzOn*, 122 F.3d at 1405 (citing *L.A. Gear*, 988 F.2d at 1124). However, in

*Avia*, the Federal Circuit stated that "[o]n a motion for summary judgment ... the question is not the 'weight' of the evidence, but the presence of a genuine issue of material fact." *Avia*, 853 F.2d at 1565. The *Avia* Court affirmed a summary judgment motion finding that Defendant's athletic shoes infringed Plaintiff's design patent.

summary judgment, denies Deer Stags's motion for partial summary judgment, and denies Deer Stags's motion to strike evidence.

SO ORDERED.

APPENDIX A

USU...380594S

# United States Patent [19]

## von Conta

[11] Patent Number: **Des. 380,594**

[45] Date of Patent: ✱✱**Jul. 8, 1997**

[54] **SHOE UPPER**

[75] Inventor: Peter von Conta, Newton, Mass.

[73] Assignee: The Rockport Company, Inc., Marlboro, Mass.

[✱✱] Term: 14 Years

[21] Appl. No.: 51,474

[22] Filed: Mar. 11, 1996

[51] LOC (6) Cl. .................................. 02-04
[52] U.S. Cl. .................................. D2/969; D2/944
[58] Field of Search .................. D2/969, 944; 36/45, 36/83, 84-89, 102-107, 114, 112, 113, 132, 136

[56] **References Cited**

**U.S. PATENT DOCUMENTS**

| | | | |
|---|---|---|---|
| D. 130,425 | 11/1941 | Daniels | . |
| D. 329,738 | 9/1992 | Keen | D2/969 |
| D. 333,379 | 2/1993 | Toakai et al. | D2/969 |
| D. 338,094 | 8/1993 | Toakai et al. | D2/969 |
| D. 341,476 | 11/1993 | Duclos | D2/969 |
| D. 342,370 | 12/1993 | Keen | D2/969 |
| D. 343,278 | 1/1994 | Toakai et al. | D2/696 |
| D. 345,460 | 3/1994 | Ryder | D2/969 |
| D. 346,483 | 5/1994 | Foster | D2/969 |
| D. 353,481 | 12/1994 | Cintron | D2/969 |
| D. 353,482 | 12/1994 | Cintron | D2/969 |
| D. 359,840 | 7/1995 | Bianchini | D2/969 |
| D. 375,830 | 11/1996 | Bianchini | . |
| 4,726,128 | 2/1988 | Lin | D2/969 X |

**FOREIGN PATENT DOCUMENTS**

365383 8/1932 United Kingdom .

**OTHER PUBLICATIONS**

6414. Ecco Collection. Autumn/Winter 1995 Catalog. p. 6.
Caribou Low Walkers. REI Spring 1997 Catalog. p. 91.
WK706BK. New Balance Fall 1993 catalog. p. 27.
M2617. The Rockport Fall 1987/Spring 1988 catalog. p. 3.
Dexter Walkmocs, Footwear News, vol. 53. No. 5 (Feb. 3, 1997) p. 39.
Sebago Fusion. Footwear News, vol. 53. No. 5 (Feb. 3, 1997) p. 49.

*Primary Examiner—Doris V. Coles*
*Attorney, Agent, or Firm—Sterne, Kessler, Goldstein & Fox P.L.L.C.*

[57] **CLAIM**

The ornamental design for a shoe upper, as shown and described.

**DESCRIPTION**

FIG. 1 is a left side elevational view of a shoe upper showing my new design;
FIG. 2 is a right side elevational view thereof;
FIG. 3 is a top plan view thereof;
FIG. 4 is a front elevational view thereof; and.
FIG. 5 is a rear elevational view thereof.
The broken-line showing of a shoe sole in FIGS. 1-5 is environmental only and forms no part of the claimed design.

**1 Claim, 2 Drawing Sheets**

FIG. I

FIG. 2

FIG. 3

FIG. 4

FIG. 5

APPENDIX B

APPENDIX C

# DEXTER WALKMOCS.

## Shoes so comfortable, you'll

## never want to stop walking.

We take walking seriously in Dexter, Maine. (We have to, the town doesn't even have a bus.) So we're introducing the Walkmocs™ line, about the most comfortable fitness walkers you can put on customers' feet. Notice the moccasin stitching. This handsewing ensures the most

**See the unbelievably comfortable Walkmocs at WSA, Las Vegas Convention Center, Booth #3667, Upper Level.**

comfortable fit. Add some incredibly soft leather uppers, flexible soles, and a natural toe last, and you've got something worth walking to town for. To learn more, simply come visit us at WSA on February 11–14. To order, contact your Dexter Sales Representative, or call 1-800-852-2336.

*Made in America*

http://www.dextershoe.com

499-01

498-05

43979-02

**stacyadams®**

| 43979-02 (43980) | BROWN LEATHER | 498-05 | BURGUNDY LEATHER | 499-01 | BLACK LEATHER |

43979-02 BROWN (43980) LEATHER

43979-01 BLACK (43979) LEATHER

ARDEN LAST
RUBBER BOTTOM
M 7-11, 12, 13
W 8-11

498-05 BURGUNDY LEATHER

498-01 BLACK LEATHER

GENEVA LAST
RUBBER BOTTOM
HEEL CUP WITH
CUSHIONED INSOLE
M 7¼-11, 12, 13
W 8 -11, 12

499-01 BLACK LEATHER

499-05 BURGUNDY LEATHER

SYDNEY LAST
RUBBER BOTTOM
HEEL CUP WITH
CUSHIONED INSOLE
M 7¼-11, 12, 13
W 8 -11, 12

USC 175830S

# United States Patent [19]

## Bianchini

| | |
|---|---|
| [11] | Patent Number: **Des. 375,830** |
| [45] | Date of Patent: **∗∗Nov. 26, 1996** |

[54] **SHOE**

[75] Inventor: William Bianchini, Elmwood, Mass.

[73] Assignee: C. & J. Clark America, Inc., Kennett Square, Pa.

[∗∗] Term: 14 Years

[21] Appl. No.: 43,909

[22] Filed: Sep. 14, 1995

[52] U.S. Cl. ................................................ D2/907

[58] Field of Search ...................... D2/896, 903, 907, D2/908; 36/83, 102, 103

[56] **References Cited**

**U.S. PATENT DOCUMENTS**

D. 303,868 10/1989 Argyropoulos ...................... D2/907

**OTHER PUBLICATIONS**

Footwear News Magazine; Sep. 1980, p. 35; Sebago Docksides.
Footwear News Magazine; Sep. 1980; p. 3; Bata Bel–Mar.

*Primary Examiner*—Dominic Simone
*Attorney, Agent, or Firm*—St. Onge Steward Johnston & Reens

[57] **CLAIM**

The ornamental design for a shoe, as shown and described.

**DESCRIPTION**

FIG. 1 is a left side elevation view of a shoe showing my new design;

FIG. 2 is a top plan view thereof;

FIG. 3 is a right side elevational view thereof;

FIG. 4 is a bottom plan view thereof;

FIG. 5 is a front elevational view thereof; and,

FIG. 6 is a rear elevational view thereof.

**1 Claim, 3 Drawing Sheets**

US00D353482S

# United States Patent [19]

Cintron

[11] Patent Number: **Des. 353,482**

[45] Date of Patent: ** Dec. 20, 1994

[54] SHOE UPPER

[75] Inventor: Arthur G. Cintron, Marlboro, Mass.

[73] Assignee: The Rockport Company, Inc., Marlboro, Mass.

[**] Term: 14 Years

[21] Appl. No.: 23,843

[22] Filed: Jun. 1, 1994

[52] U.S. Cl. .......................... D2/969; D1/944

[58] Field of Search .............. D2/896, 902, 907, 924, D2/943–945, 969, 970; 36/45, 83, 84, 89, 102–107, 112–115, 132, 136

[56] References Cited

### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| D. 236,664 | 9/1975 | Moore . | |
| D. 264,394 | 5/1982 | Hlustik . | |
| D. 270,015 | 8/1983 | Radford . | |
| D. 288,742 | 3/1987 | Caretti . | |
| D. 291,501 | 8/1987 | Tong | D2/969 |
| D. 296,033 | 6/1988 | Brown et al. . | |
| D. 296,606 | 7/1988 | Sorofman | D2/924 |
| D. 296,610 | 7/1988 | Brown et al. | D1/969 |
| D. 296,612 | 7/1988 | Brown et al. . | |
| D. 301,082 | 5/1989 | Duclos | D2/969 |
| D. 301,386 | 6/1989 | Weiner . | |
| D. 302,070 | 7/1989 | Kilgore et al. | D2/944 |
| D. 304,876 | 12/1989 | Brown et al. | D2/969 |
| D. 310,441 | 9/1990 | Ali et al. | D2/969 |
| D. 333,379 | 2/1993 | Tonkel et al. . | |
| D. 333,550 | 3/1993 | Marziali et al. | D2/969 |
| D. 337,646 | 7/1993 | Valade . | |
| D. 342,370 | 12/1993 | Keen | D2/969 |

| | | | |
|---|---|---|---|
| D. 345,460 | 3/1994 | Ryder | D2/969 |
| D. 346,483 | 5/1994 | Foster | D2/969 |

### FOREIGN PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 1124060 | 5/1982 | Canada | D2/D2 902 |

### OTHER PUBLICATIONS

M2617, Rockport Men's Fall 1987/Spring 1988 Line Sheet Catalog (p. 3).

W8034, Rockport Fall 1988 Line Sheet Catalog.

Natalie (p. 12) and M5132 (p. 20), Rockport Spring 1991 Men's and Women's Collections Catalog.

M3331 (pg. 1), M3155 (p. 2) and M2686 (pg. 2), Rockport Spring 1994 Footwear Catalog.

M8029, Rockport for Men Footwear Catalog (p. 17) (Date Unknown).

*Primary Examiner*—Louis S. Zarfas

*Attorney, Agent, or Firm*—Sterne, Kessler, Goldstein & Fox

[57] **CLAIM**

The ornamental design for a shoe upper, as shown and described.

**DESCRIPTION**

FIG. 1 is a left side elevational view of a shoe upper showing my new design;

FIG. 2 is a right side elevational view thereof;

FIG. 3 is a top plan view thereof;

FIG. 4 is a front elevational view thereof; and,

FIG. 5 is a rear elevational view thereof.

The broken line showing of a shoe sole in the Figures is environmental only and forms no part of the claimed design.

Rockport v. Deer Stags

R 0000269