Michael NASO, Frank Naso and Zeta Products, Inc., Plaintiffs,

v.

KI PARK, Celico International, Equity Leasing, Herbert Moelis and Microfilm Products Company, Defendants.

No. 93 Civ. 0915 (WCC).

United States District Court, S.D. New York.

July 1, 1994.

William T. Hough, Basking Ridge, NJ, for plaintiffs.

Baker & Friedman, New York City, for defendants; Ben C. Friedman, Paul D. Getzels, of counsel.

## OPINION AND ORDER

WILLIAM C. CONNER, Senior District Judge.

This action for alleged infringement of two patents covering film reels is before the Court on cross motions for summary judgment on the issue of infringement. The patents in suit are U.S. patent No. 4,798,352 issued January 17, 1989 (the '352 patent) and U.S. patent No. 4,683,111 (the '111 patent) issued September 5, 1989 on a continuation-in-part of the same original application Serial No. 118,654 filed November 9, 1987 in the names of plaintiffs Michael Naso and Frank Naso. For the reasons stated hereinafter, defendants' motion for summary judgment is granted in part and denied in part and plaintiffs' cross motion is denied.

### The patented inventions

The '352 patent discloses and claims a film reel having, in the annular space between an outer collar around which the film is wound and an inner collar which is rotatably supported on the spindle of the machine, means for securing the end of a film which is threaded through a slot in the outer collar, which means comprises a post around which the film is wrapped so that the end portion of the film may be bent back to lie between the adjacent portion of the film and the inner collar and be frictionally held thereby. This annular space is accessible through an opening in the central portion of one of the two circular flanges which confine the edges of the film wound on the outer collar, that flange also having a radial slot which extends from the central opening to the periphery of the flange to facilitate threading the end of the film into the central opening by pressing it edgewise through the aligned slots in the flange and the outer collar and securing it by wrapping it around the inner collar and doubling it over around the post to trap its end between the film and the inner collar.

As is common in such reels, the inner collar does not have a smooth, cylindrical outer surface, but has extending radially outward from it a number of spaced, short ribs around which the film is wound, so that the film follows a path which is not circular but has a number of angular turns to enhance the frictional engagement of the film. In a preferred embodiment of the invention, the outer ends of the ribs are arcuately curved to limit the sharpness of the bends in the film.

In another preferred embodiment of the invention, to which the '111 patent is specifically directed, the inner surface of the outer collar is provided with a number of spaced short ribs which project radially inward between the outer ends of the ribs on the inner collar to press the film inwardly at those points and thus force the film to follow a convoluted path around the inner collar and further enhance its frictional engagement.

### The '352 patent claims

Claim 1 of the '352 patent, one of only two independent claims of the patent, reads:

1. In a film reel having an upper face and an opposite side lower face, in combination having a film-threadable film-retaining core (a) that has an outer collar with an outer collar radially-inwardly positioned wall-surface and with an outer collar radially-outwardly positioned wall-surface, (b) that has an inner collar with an inner collar radially-inwardly positioned wall-surface and with an inner collar radially-outwardly positioned wall surface, defining a film-threading space between said outside collar's inside wall surface and said inside collar radially-outwardly positioned wall surface, (c) that has a collar's anchoring floor connecting with at-least a major portion of each of the inner collar radially-outwardly positioned wall-surface and the outer collar radially-inwardly positioned wall-surface, (d) that has a radially-extending core-anchoring wall radially-extending between and connecting-together said inner and outer collars, (e) a film-threading slot that extends-radially through said outside collar, and (f) the film-threading space extending from an open slot that extends-radially through said outside collar, the film-threading space extending substantially around said inside collar to terminate at said core-anchoring wall, and (g) said inner collar radially-inwardly positioned wall surface being a spindle-receptacle structure forming a spindle-receiving space of said opposite lower face, the improvement being in said core additionally as a part of said combination comprising: (1) said inner collar radially outwardly-positioned wall-surface including a plurality of wall structures each extending radially outwardly a predetermined distance to end as a wall structure distal-end defining a film-threading gap between said wall-structure distal-end and said outer collar's radially-inwardly extending wall-surface; and (2) a film anchoring post means for reversing direction of the threaded film to be wrapped there-around to reverse the film-threading direction, said film-anchoring post means being located within said film-threading space extending upwardly from said collars's (sic) anchoring floor, and said film-anchoring post means being positioned and spaced-away-from each of said core-anchoring wall, the inner collar radially-outwardly positioned wall surface and the radially-inwardly positioned wall surface.

Claim 15, the other independent claim, is similar to Claim 1 but adds the limitation:

on said upper face, at-least said inner collar radially inwardly-positioned wall-surface including a plurality of consecutive substantially separate sides joined at and forming corners therebetween as adjoining sides, concurrently forming on said lower face a multisided driving spindle revolvably drivable of the film reel ...

There is no dispute concerning the readability of this limitation on defendants' accused reels, and therefore no reason to discuss Claim 15 separately from Claim 1.

Claims 2 through 14 of the '352 patent are dependent, either directly or indirectly, on Claim 1 and Claims 16 through 23 are dependent, directly or indirectly, on Claim 15. Claims 2 through 5, 10 through 13, 16 and 17 add limitations as to which there is no dispute concerning their readability on defendants' accused reels, and there is therefore no reason to discuss them separately from Claim 1. Claims 6 through 8 and 19 through 22 add different limitations concerning the cross-sectional shape of the spindle-receiving hole. They are not charged to be infringed by defendants. Claims 9, 14 and 23 add limitations specifying that the distal ends of the outwardly extending ribs on the inner collar are formed into posts with arcuate outer surfaces of a "radius such that a major amount of surface contact thereof is made with a face of the film." Apparently plaintiffs do not charge infringement of these three claims by defendants.

*The '111 patent claims*

Claim 1, the only independent claim of the '111 patent, contains in its preamble recital of the environment of the patented improvement, all of the structural limitations of Claim 1 of the '352 patent, and adds the following description of the claimed improvement thereover: .

at-least one flange mounted on and extending radially inwardly from said outer collar radially-inwardly positioned wall-surface, said one flange having a flange distal end,

said flange being mounted at a location and extending in a direction such that said distal end is positioned within said film-threading space and is positioned between and in spaced-away relationship to adjacent ones of two of said plurality of wall structures, and said one flange extending radially inwardly a distance sufficiently (sic) to press against a film tautly threaded between adjacent ones of said plurality of wall structures when a film is threaded within said threading space.

Dependent Claim 2 adds the limitation that the flange extends at an angle of less than 90 degrees in the counter-clockwise direction (the direction of threading), and the specification asserts that this inclination of the flange tends to prevent loosening of the film when the reel is subjected to the shock of reversals of direction between alternate forward and reverse windings of the film. Claims 3 and 4 are both dependent upon Claim 2 and, for reasons which will be apparent hereinafter, need not be separately discussed.

*Contentions of the parties*

Defendants urge that they are entitled, as a matter of law, to a summary judgment of non-infringement of both patents in suit on the ground that their accused tape reels lack two features called for in Claim 1 of both patents:

(1) "a film-threading space between said outside collar's inside wall surface and said inside collar's radially-outwardly (sic) positioned wall surface," a limitation which defendants contend requires that there be no inward projections from the inner surface of the outer collar and excludes defendants' reels, which have ribs projecting radially inward from the outer collar into the film-threading space;

(2) the distal ends of the ribs projecting radially outwardly from the outer surface of the inner collar must be "at least arcuately formed."

Plaintiffs contend that these claims contain no such limitations and are infringed by defendants' accused reels, as a matter of law.

Defendants further urge that Claim 1 of the '111 patent is not infringed by their accused reels for the additional reason that in their reels the ribs which extend radially inward from the inner surface of the outer collar do not extend so far as to cross a straight line drawn between the distal ends of the adjacent ribs projecting radially outward from the outer surface of the inner collar and thus do not "press against a film tautly threaded" between such distal ends. Plaintiffs do not respond to this contention.

## DISCUSSION

*Applicable legal principles*

As the Court of Appeals for the Federal Circuit has repeatedly emphasized:

> Summary judgment is as appropriate in a patent case as in any other. Where no genuine issue of material fact remains and the movant is entitled to judgment as a matter of law, the court should utilize the salutary procedure of Fed.R.Civ.P. 56 to avoid unnecessary expense to the parties and wasteful utilization of the jury process and judicial resources.

*Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd.,* 731 F.2d 831, 835 (Fed. Cir.1984), cited in *Becton Dickinson & Co. v. C.R. Bard, Inc.,* 922 F.2d 792, 795–96 (Fed. Cir.1990).

 Although the issue of infringement may involve questions of fact, the interpretation of patent claims and the determination of their proper scope is a question of law. *George v. Honda Motor Co.,* 802 F.2d 432, 434 (Fed.Cir.1986). Thus, a summary judgment of non-infringement may be appropriate where there no genuine issues of material fact. *Chore–Time Equipment, Inc. v. Cumberland Corp.,* 713 F.2d 774, 778–79 (Fed.Cir. 1983).

*Interpretation of the claims charged to be infringed*

All of the independent claims in suit, Claims 1 and 15 of the '352 patent and Claim 1 of the '111 patent, are in the classic form recognized in *Ex parte Jepson,* 1917 C.D. 62, 243 O.G. 525 (Ass't Comm'r 1917), and approved in *Williams Mfg. Co. v. United Shoe Machinery Corp.,* 316 U.S. 364, 369, 62 S.Ct.

1179, 1182, 86 L.Ed. 1537 (1942). Such claims, commonly referred to as "Jepson" claims, begin with a (frequently lengthy) preamble setting forth the environment of the claimed improvement. The preamble begins with a phrase such as "In a machine [or other device] for performing [a specified operation] including ..." and proceeds to describe a known type of machine or other device in which the improvement is incorporated. The claim then concludes with a description of the improvement, usually beginning with a phrase such as "the improvement which comprises...." Such claims are favored because they clearly separate the elements of the overall combination which are admittedly old from those which are claimed as new. *Williams*, 316 U.S. at 369, 62 S.Ct. at 1182 Rule 75(e) of the Rules of Practice of the U.S. Patent and Trademark Office, 35 CFR 1.75(e).

Defendants have ignored this well-known characteristic of Jepson claims in some of their arguments of non-infringement.

■ A. Claims 1 and 15 of the '352 patent and Claim 1 of the '111 patent do not exclude reels in which there are ribs projecting inwardly from the inner surface of the outer collar. Defendants' argument to the contrary is based upon the portion of the preamble of these claims which describes the environment of the claimed improvement as a reel with outer and inner collars "defining a film-threading space between said outside collar's inside wall surface and said inside collar radially-outwardly positioned wall surface." Defendants argue that because in their accused reel there are ribs projecting inwardly from the inner surface of the outer collar, the outer margin of the film-threading space is not defined by the inside wall surface of the outer collar but by the distal (inner) ends of the ribs. Defendants attempt to bolster this argument by pointing to the portions of the specification of the '352 patent which criticize the prior art reels for their "narrow passages and complicated configurations and/or arrangements requiring time-consuming care and caution in the threading thereof" and which state that an object of the patented invention is to provide a reel "that enables speedy and secure anchoring of the free end of the film to be wound upon the reel."

Defendants reason that because in their accused reels the inwardly projecting ribs narrow and complicate the shape of the film-threading passage and therefore increase the care and time required for the film-threading process, the above-quoted portion of the patent claims cannot be construed to apply to them. There are a number of flaws in that reasoning.

First, as noted above, the quoted language appears only in the *preamble* of the claims, which merely describes the *environment* of the claimed invention—that is, the known type of device which the patentees claim to have improved. Thus they were describing in general terms the prior art reels, which may have the narrow and complicated film-threading passages which they criticized in the "Background" portion of the patent specification.

Second, the quoted language does not expressly require that the inner surface of the outer collar be smooth and cylindrical, with no inward projections. Fairly interpreted, the language merely identifies the film-threading space as that space defined on the outside by the inner surface of the outer collar (without specifying whether that surface is smooth or may have inward projections) and on the inside by the outer surface of the inner collar (likewise regardless of its shape). Indeed, if that language were construed to require a smooth, cylindrical shape of the outer surface of the *inner* collar, the claim would not be readable upon any of the various reels shown in the patent drawings (all of which have ribs projecting radially outward from the outer surface of the inner collar) and would not be otherwise supported by the patent specification.

Third, the identical language appears in the preamble of Claim 1 of the '111 patent, which, as previously noted, is directed to a reel having ribs projecting inwardly from the inner surface of the outer collar a sufficient distance to press upon a film tautly stretched between the distal ends of the ribs projecting outwardly from the inner collar—even farther inwardly than the ribs in defendants' reels. Obviously, the language in question

was intended by the inventors and understood by the Patent Examiner not to require a smooth inner surface on the outer collar and to be consistent with the presence of ribs projecting inwardly therefrom. Since the '111 patent was issued on a continuation-in-part of the same application that resulted in the '352 patent, it is clear that the same language in the claims of the two patents should be given the same meaning.

Finally, since in defendants' accused reels the ribs projecting inwardly from the inner surface of the outer collar are so short that they do not touch a film stretched tautly between the distal ends of the ribs extending outwardly from the inner collar, they perform no apparent useful function but, quite the contrary, narrow and complicate the shape of the film-threading space and add to the care and time required for film threading. The only apparent reason for their existence was to attempt to get around the wording of the patent claims, or at least defendants' restrictive construction of their wording. But infringement is not avoided by practicing the patented invention in a form that is less advantageous than the preferred embodiment disclosed in the patent specification. *Micro–Probe, Inc. v. Wentworth Laboratories, Inc.*, 622 F.2d 433, 435 (9th Cir. 1980).

■ B. Claims 1 through 5, 10 through 13, 15 through 18 and 22 of the '352 patent are not limited to arcuate surfaces on the distal ends of the outwardly extending ribs on the inner collar. Defendants' contention that all the claims of both patents in suit are thus limited is devoid of merit, for several reasons.

First, the language repeatedly quoted by defendants, describing the distal ends of the ribs as being "at least arcuately formed," is a quotation not from any of the patent claims but from the specification at column 6, lines 62 and 63, where it appears as part of the description of one illustrative embodiment of the invention. It is axiomatic that the coverage of a patent is defined by its claims, and is not limited to precise duplicates of the exemplary structures shown and described in its drawings and specification. *Aro Mfg. Co., Inc. v. Convertible Top Replacement Co.,*

*Inc.*, 365 U.S. 336, 339, 81 S.Ct. 599, 600, 5 L.Ed.2d 592 (1961); *SRI Int'l. v. Matsushita Electric Corp. of America,* 775 F.2d 1107, 1121 (Fed.Cir.1985).

Second, Claim 14, which is dependent on Claim 1, differs from Claim 1 only in that it adds to the combination described in that Claim a limitation requiring that the distal ends of the ribs extending outwardly from the inner collar "form an upwardly extending post having an arcuate surface * * * of a predetermined length and radius such that a major amount of surface contact is made with a face of a film threaded thereagainst * * *." If Claim 1 were interpreted to require such arcuate surfaces, this would violate the strict rule that a limitation added by a dependent claim cannot be read into the claim on which it is dependent, because this would make the two claims duplicative. *Laitram Corp. v. Cambridge Wire Cloth Co.,* 863 F.2d 855, 866 (Fed.Cir.1988); *DMI, Inc. v. Deere & Co.,* 755 F.2d 1570, 1574 (Fed.Cir.1985).

■ C. All of the claims of the '111 patent expressly require ribs extending inwardly from the inner surface of the outer collar a distance sufficient to press against a film tautly threaded between the distal ends of the adjacent ribs projecting outwardly from the inner collar. As previously noted, in defendants' reels, exemplified by Exhibit 6 to defendants' motion papers, these inwardly extending ribs are too short to press against a film thus threaded. Therefore none of the claims of the '111 patent are readable on the accused reels, Exhibit 6.

*Summary*

For the reasons detailed above:

1. Defendants' motion for summary judgment is granted as to all claims of the '111 patent, and the action is dismissed to the extent that it charges infringement of the '111 patent by reels of the type exemplified by Exhibit 6.

2. Defendants' motion for summary judgment is denied in all other respects.

3. Plaintiffs' cross motion for summary judgment is denied in all respects. Although the Court has rejected defendants' conten-

tions that the claims must, as a matter of law, be interpreted so that they do not cover defendants' accused reels, the Court is not prepared to rule on the present record, as a matter of law, that the claims are infringed by such reels. For example, it is conceivable that, at the trial of the case, evidence of additional prior art may be introduced which will require limiting the claims to a scope narrower than their literal wording—an application of the so-called reverse doctrine of equivalents.

4. No attorneys' fees are awarded.

So Ordered, July 1, 1994