**HSIN TEN ENTERPRISE USA, INC., Plaintiff,**

v.

**CLARK ENTERPRISES, Defendant.**

**No. 00 CIV. 5878(SAS).**

United States District Court, S.D. New York.

July 5, 2001.

Martin G. Raskin, Joshua L. Raskin, Steinberg & Raskin, P.C., New York City, for Plaintiff.

Arlen L. Olsen, Schmeiser, Olsen & Watts, Latham, NY, for Defendant.

## OPINION AND ORDER

SCHEINDLIN, District Judge.

This is a patent infringement action in which plaintiff Hsin Ten Enterprise USA, Inc. ("Hsin Ten") alleges that defendant Clark Enterprises infringed upon Hsin Ten's United States Design Patent number Des. 329,499 ("the '499 patent" or "design patent"). See Defendant Clark Enterprises Memorandum re: Patent Claim Construction ("Def.Mem.") at 1.

Before the fact-finder can determine whether there has been infringement, the Court must first construe the patent claim to ascertain its meaning and scope as a matter of law. See Markman v. Westview Instruments, Inc., 52 F.3d 967, 976 (Fed. Cir.1995) (en banc), aff'd, 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). To aid the Court in construing the patent claim, both parties briefed their proposed claim constructions and presented their respective contentions to the Court at a Mark-man hearing conducted on June 13, 2001. After the hearing, both parties submitted supplemental briefs. After considering the evidence, the Court construes the '499 patent as set forth below.

## I. BACKGROUND

Hsin Ten is a New York corporation with its principal place of business in Farmingdale, New York. See Amended Complaint ¶ 1. Hsin Ten entered into an exclusive licensing agreement with Skylite Industry Co. Ltd. ("Skylite"), granting Hsin Ten the exclusive right to manufacture, use and sell aerobic exercise machines under two patents issued to Skylite, including the '499 patent for the "Electric Foot Massager". See id. ¶ 10. Hsin Ten also owns "The Chi Machine" trademark and markets and sells an "electric massage apparatus" bearing that mark. See id. ¶¶ 11–12.

Clark Enterprises is a Kansas-based business with its principal offices in Salina, Kansas. See id. ¶ 2. In or about January 2000, Clark Enterprises began marketing an aerobic exercise machine in direct competition with Hsin Ten's "The Chi Machine" brand exercise machines. See 10/23/00 Declaration of Peter Acevedo, Vice President Assistant of Hsin Ten, ¶ 6.

Hsin Ten originally asserted two counts of patent infringement, trademark infringement, and other acts of unfair competition against Clark Enterprises. See Amended Complaint ¶ 5. Hsin Ten has since withdrawn one of its patent infringement claims and the only remaining patent in dispute is the '499 patent. See Def. Mem. at 1.

## II. DISCUSSION

### A. Design Patent Infringement

■ Determining whether a design patent has been infringed requires a two-step

analysis. *First*, the court must construe the patent claim to determine its meaning and scope as a matter of law. *See Markman*, 52 F.3d at 976. *Second*, the properly construed patent claim must be compared to the accused design to determine whether there has been infringement. *See id.* In the second step of the analysis, the factfinder must compare the patented and accused designs to determine whether the accused design is substantially similar in appearance to the patented design. *See Gorham Co. v. White*, 81 U.S. (14 Wall.) 511, 528, 20 L.Ed. 731 (1871). In addition to overall similarity of designs, the factfinder must also consider whether the accused design appropriates the specific novel features of the patented device which distinguishes it from the prior art. *See Sun Hill Indus., Inc., v. Easter Unlimited, Inc.*, 48 F.3d 1193, 1197 (Fed.Cir.1995) (quoting *Litton Sys., Inc. v. Whirlpool Corp.*, 728 F.2d 1423, 1444 (Fed.Cir.1984)). The patentee must prove both substantial similarity and appropriation of the "point of novelty" for a successful infringement claim. *See Sun Hill*, 48 F.3d at 1197.

## B. Principles of Claim Construction

As described above, the court must first construe the scope of the patent claim as a matter of law before the factfinder addresses the question of infringement. With a utility patent, the court construes the patent by arriving at an understanding of the language of the patented claim. *See Markman*, 52 F.3d at 981. With a design patent, however, the process of claim construction "must be adapted to the practice that a patented design is claimed as shown in its drawing. There is usually no description of the design in words[.]" *Goodyear Tire & Rubber Co. v. Hercules Tire and Rubber Co., Inc.*, 162 F.3d 1113, 1116 (Fed.Cir.1998). Design patents are limited to what is shown in the application drawings and are narrow

in scope. *See Rockport Co., Inc. v. Deer Stags, Inc.*, 65 F.Supp.2d 189, 192 (S.D.N.Y.1999); *Elmer v. ICC Fabricating, Inc.*, 67 F.3d 1571, 1577 (Fed.Cir. 1995).

A design patent only protects the novel, ornamental aspects of a design as shown in the patent. *See OddzOn Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1405 (Fed.Cir.1997) (citing *Lee v. Dayton–Hudson Corp.*, 838 F.2d 1186, 1188 (Fed.Cir. 1988)). If a design contains both functional and non-functional elements, the court must identify the non-functional aspects to construe the scope of the design patent. *See OddzOn*, 122 F.3d at 1405. A particular feature is ornamental if "the functional aspect or purpose could be accomplished in many other ways." *Avia Group Int'l, Inc. v. L.A. Gear California*, 853 F.2d 1557, 1563 (Fed.Cir.1988).

To identify the novel, non-functional aspects of a design, the court must start by examining three sources of intrinsic evidence. *First*, the court must examine the patent claim itself and identify all of the claimed design features which create the overall visual impression. *See Markman*, 52 F.3d at 979. *Second*, the court examines the descriptions or specifications contained in the patent claims. *See id.* at 979. *Third*, the court considers the patent's prosecution history. *See id.* at 980. The prosecution history aids the court in determining whether or not a claimed feature is novel. Although the prosecution history can and should be used to ascertain the meaning of the claim language, it cannot "enlarge, diminish, or vary" the limitations in the claims. *See id.* (quoting *Goodyear Dental Vulcanite Co. v. Davis*, 102 U.S. 222, 227, 12 Otto 222, 26 L.Ed. 149 (1880)).

If the court can derive an unambiguous construction of the patented claim

from the intrinsic evidence, the court need not, and should not, consider extrinsic evidence. *See Evans Medical Ltd. v. American Cyanamid Company*, 11 F.Supp.2d 338, 347 (S.D.N.Y.1998) (citing *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1585 (Fed.Cir.1996)), *aff'd*, Nos. 98 Civ. 1440, 98 Civ. 1459, 1999 WL 594310 (Fed. Cir. Aug.9, 1999). Extrinsic evidence includes "all evidence external to the patent and prosecution history." *See Markman*, 52 F.3d at 980. The court should only rely on extrinsic evidence when necessary to resolve an ambiguity in a disputed claim term. *See TM Patents v. International Business Machines Corp.*, 72 F.Supp.2d 370, 374 (S.D.N.Y.1999). As with intrinsic evidence, extrinsic evidence "may not be used to vary or contradict the claim language." *Vitronics*, 90 F.3d at 1585.

 Expert testimony, which provides evidence of how those skilled in the art would interpret the claim, is an example of extrinsic evidence on which the court may rely. *See Markman* at 979. However, the court, in its discretion, may adopt the expert opinion as its own, find guidance from it, ignore it, or even exclude it. *See id.* at 983. Expert opinions cannot bind the court or relieve the court of its obligation to construe the claims according to their meaning in the patent. *See id.*

After considering all the evidence, a court must decide the meaning of the patent claims. *See id.* at 981.

### C. Construction of the '499 Design Patent

A design patent is defined by what is shown in the design patent drawings. *See id.* The only words contained in the '499 patent are "The ornamental design for an electric foot massager, as shown and described." *See* United States Patent, Ex. 2 to Amended Complaint, at 1. The claim includes seven drawings, which represent seven different views of the foot massager design. *See id.* The design patent description indicates the specific view and embodiment contained in each drawing. *See id.* The Court agrees that "the illustration is its own best description" and holds that the proper claim construction of the '499 patent is limited to what is shown in the application drawings. *See* Donald S. Chisum, *Chisum on Patents*, Section 1.04[3], at 1–220.3 (1998).

Hsin Ten and Clark Enterprises both agree that the Court must further limit the scope of the patent claim by determining which elements of the claim are functional, and thus, not protected by the '499 patent. Hsin Ten and Clark Enterprises also agree that the Court must decide which non-functional, ornamental features are "points of novelty" that deserve protection under the '499 patent.

At the *Markman* hearing, Hsin Ten called its in-house paralegal to aid the Court in construing the '499 patent. *See* Plaintiff's Post Markman Hearing Brief in Support of Its Proposed Claim Construction of U.S. Patent No. Des. 329,499 ("Pl. Post–Markman Br.") at 5. Neither Hsin Ten nor Clark Enterprises have produced any expert witnesses. In this case, the intrinsic evidence is sufficient to construe the '499 patent.

### 1. Identifying the Non–Functional, Ornamental Features

 After considering the evidence, the Court makes the following determination of whether each element of the '499 patent is functional or non-functional.

#### a. The Ankle Rest:

1) The presence of an ankle rest is per se functional.

2) The rectangular lower edge of the ankle rest and the thin rib extending

around the lower edge is ornamental. The thin rib is purely decorative and serves no functional purpose.

3) The smooth flat front, rear and side surfaces of the ankle rest are ornamental. These surfaces do not necessarily need to be flat, nor do they need to be smooth. As Hsin Ten points out, the front, rear and side surfaces of the ankle rest could be rounded without compromising functionality. *See* Pl. Post–Markman Br. at 10.

4) The existence and shape of the concavities, in which the ankles are placed, are functional.

5) The design of the three upper surfaces of the ankle rest, which frame the two concavities, is ornamental. The three upper surfaces do not necessarily need to be of the same height, nor does the middle portion between the concavities need to be flat when viewed from the front.

6) The existence and shape of the two bolt hole cover members on the central front region of the ankle rest are ornamental. There are other ways to hide the bolts and the covers need not be convex or spherical.

**b. The Base**

1) The presence of the base is per se functional.

2) The overall box-like impression of the base is ornamental. The base does not need to have four substantially flat sides which meet at four distinct corners. The base does not, as Clark Enterprises claims, need to be box-shaped for ease of "fabrication, storage, packaging, and shipment." Def. Mem. at 6. The base could be made, alternatively, with rounded sides and rounded corners.

3) The inclined sides of the base which create a trapezoidal shape when viewed from the front are ornamental. A trapezoidal shape is not the only shape that would provide the stability necessary for proper functioning of the machine.

4) The mounting of the ankle rest on the rear surface portion of the box-shaped base is functional.

5) The inclined top forward surface portion and the horizontal rectangular rear surface portion of the base are ornamental. The top forward surface does not need to be inclined because the shape of the forward surface portion does not in any way affect the utility of the device. *See* Pl. Post–Markman Br. at 7. There are also several alternative ways to design the top surface of the base other than having an inclined forward portion and a horizontal rearward portion. *See id.*

6) The rounded portion protruding from the central front region of the base is ornamental.

7) The relative dimensions of the ankle rest and the base are ornamental.

**c. Other Elements**

1) The existence of the handle is functional. The location of the handle, whether on the front or back of the machine, is ornamental. The specific design and shape of the handle, whether open or closed or rectangular or circular, is ornamental. The handle, as claimed in Figure 3 of the '499 patent, is essentially rectangular in shape and "open" so that a user can place his or hand through the handle. The handle is centrally placed on the rounded portion of the front of the base.

2) The existence of the remote control is functional. The attachment of the remote control to the rear surface of the base by an electric cord is functional. The specific shape and design of the remote control is ornamental, as long as

it fits easily in a user's hand. The remote control, as depicted in Figure 1, consists of a rounded top portion which is larger than the square lower portion. A dial controlling the timer is located within a circular portion that is carved out of the larger rounded portion of the remote control.

3) The existence of the vents on the bottom of the base is functional. The specific configuration and shape of the vents is ornamental. The vents are small elongated ovals positioned on the bottom face of the machine near the front. They are arranged in staggered rows of four with four vents per row, for a total of 16 vents.

4) The position and relative size of the name plate is ornamental. The name plate is on the front right hand side of the sloped front top face of the base. The name plate is relatively small and rectangular in shape.

## 2. Identifying the Points of Novelty

The Examiner of the 540,803 application ("the '803 application"), which issued as the '499 patent, cited five prior art references during the prosecution of the patent. *See* Plaintiff's Brief in Support of its Proposed Claim Construction of U.S. Patent No. Des. 329,499 ("Pl.Br.") at 7. The prior art references of the '803 application include U.S. Patent Nos. 231,804 to McNair ("the '804 patent"); 234,828 to McNair ("the '828 Patent"); 2,742,037 to Svoren ("the '037 patent"); 3,789,836 to Girten ("the '836 patent"); and 3,830,232 to McNair ("the '232 patent"). *See id.* Hsin Ten claims that the "unique combination" of the ornamental features, including the box-like trapezoidal shape of the base, is the point of novelty that distinguishes the '499 patent from the prior art. *See* Pl. Post–Markman Br. at 10. Clark Enterprises argues that the following features

are not novel and, thus, should be excluded from the infringement analysis: the box-like shape of the base; the inclined sides of the base creating a trapezoidal appearance; the inclined forward surface and horizontal rearward portion of the base; and the flat sides of the ankle rest. *See* Defendant's Response to Plaintiff's Post Markman Hearing Brief ("Def. Post–Markman Br.") at 16–17.

The Federal Circuit has held that the district court cannot "evade the point of novelty test by relying on the claimed overall design as the point of novelty." *Sun Hill,* 48 F.3d at 1197. Under the "point of novelty" approach, the accused product must appropriate "those aspects of a design which render the design different from prior art designs." *Winner Int'l Corp. v. Wolo Mfg. Corp.,* 905 F.2d 375, 376 (Fed.Cir.1990). "To consider the overall appearance of a design without regard to prior art would eviscerate the purpose of the 'point of novelty' approach[.]" *Id.*

■ Hsin Ten's description of the point of novelty as the "overall design" of the claimed patent is too broad. *See* Pl. Post–Markman Br. at 13. A proper comparison of the '499 patent with the prior art demonstrates that a box-shaped base with inclined sides creating an overall trapezoidal impression is not novel. A box-shaped base is disclosed in the '037, '836, '828 and '232 patents. Inclined sides creating an overall trapezoidal impression can be seen in the '804, '232, '037 and '836 patents. The combination of the inclined top surface portion and horizontal rear surface portion is also not novel because this precise combination is disclosed in the '804 patent. An inclined forward surface portion is disclosed in the '804, '828, '232 patents. In any case, the '804 patent alone depicts the main features in contention. Specifically, the '804 patent shows a combination of a box-like trapezoidal base with an inclined

top forward surface portion and a horizontal rear surface portion. Finally, the smooth, flat sides of the ankle rest are disclosed in the '804 patent.

## III. CONCLUSION

█ After considering all of the evidence received at the *Markman* hearing, the Court construes the '499 patent to include the overall visual impression of the following novel, ornamental features:

1) The rectangular lower edge of the ankle rest and a thin rib extending around the lower edge.

2) The three upper surfaces of the ankle rest, which frame the two concavities, being of the same height with the middle portion between the concavities being flat when viewed from the front.

3) The two spherical, convex bolt hole cover members located in the central front region of the ankle rest.

4) The relative dimensions of the ankle rest and the base.

5) The shape, size and placement of the rounded portion protruding from the central front region of the base.

6) The open, rectangular handle mounted on the front rounded portion of the base.

7) The specific shape and design of the remote control as described above, as long as it fits easily in a user's hand.

8) The specific configuration and shape of the vents on the bottom of the base as described above.

9) The position and relative size of the name plate as described above.

A conference is scheduled for July 16 at 4:30 P.M.

SO ORDERED: