**METROKANE, INC., Plaintiff,**

**v.**

**The WINE ENTHUSIAST, a New York Corporation, Adam Strum, Cybil Strum and Cisco Sales Corporation, a California Corporation, Defendants.**

**No. 01 CIV 1058 (WCC).**

United States District Court, S.D. New York.

Feb. 8, 2002.

See also 160 F.Supp.2d 633.

Seward & Kissel LLP, New York City (Mark D. Kotwick, Esq., Jeffrey M. Dine, Esq., Of Counsel), Husch & Eppenberger, LLC, St. Louis, MO (Michael H. Wetmore, Esq., Dutro E. Campbell II, Esq., Of Counsel), for Plaintiff.

Levisohn, Lerner, Berger & Langsman, New York City (Peter L. Berger, Esq., Marilyn Neiman, Esq., Of Counsel), for Defendants.

### OPINION AND ORDER

WILLIAM C. CONNER, Senior District Judge.

Plaintiff Metrokane, Inc. ("Metrokane") filed the original Complaint in this action on February 13, 2001 against defendants The Wine Enthusiasts, Inc. ("TWE"), Adam Strum, Cybil Strum (collectively, the "Strums") and Cisco Sales Corporation ("Cisco" or "defendant"), alleging, *inter alia,* copyright infringement, trade dress infringement and unfair competition. On May 18, 2001, plaintiff filed an Amended Complaint adding two counts of design patent infringement. In an Opinion and Order dated August 8, 2001, this Court granted defendants' motion to dismiss plaintiff's trade dress and unfair competition claims. *Metrokane, Inc. v. The Wine Enthusiast,* 160 F.Supp.2d 633 (S.D.N.Y. 2001) (*"Metrokane I"*). On November 19, 2001, pursuant to a stipulation of settlement, this Court dismissed with prejudice all claims by plaintiff against defendants TWE and the Strums, leaving Cisco as the only defendant. Cisco now moves to dismiss the design patent infringement claims pursuant to FED. R. CIV. P. 12(b)(6), and alternatively, asks this Court to convert the motion to one for summary judgment and to grant summary judgment pursuant to FED. R. CIV. P. 56. For the reasons stated below, defendant's motion to dismiss is denied, and the converted motion for summary judgment is granted.

## BACKGROUND [1]

Plaintiff, a New York corporation, owns United States Patent No. Des. 441,265 (the "'265 patent") and United States Patent No. Des. 442,045 (the "'045 patent"), designed by Edward Kilduff, which depict "ornamental designs" for separate portions of a lever-operated corkscrew device. (Am.Complt.¶¶ 66–67, 75–76, Def.Mem.Supp.Mot.Dismiss, Exs.9,10.) These patented designs are, at least in part, incorporated in plaintiff's commercial, lever-operated corkscrew device, which is marketed under the trademark "Rabbit." Defendant Cisco, a California corporation, manufactures and sells its own lever-operated corkscrew device called "Insta–Pull." [2] (*Id.* ¶¶ 6, 23.) According to plaintiff, the design of the Insta–Pull infringes both the '265 and '045 patents. (*Id.* ¶¶ 69, 78.)

## DISCUSSION

### I. *Defendant's Alternative Motion*

#### A. *Standard for Motion to Dismiss Under Rule 12(b)(6)*

Defendant initially moves to dismiss the Amended Complaint pursuant to Rule 12(b)(6). On a motion to dismiss pursuant to Rule 12(b)(6), the court must accept as true all of the well pleaded facts and consider those facts in the light most favorable to the plaintiff. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *overruled on other grounds, Davis v. Scherer,* 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984); *Hertz Corp. v. City of New York,* 1 F.3d 121, 125 (2d Cir.1993); *In re AES Corp.*

*Sec. Litig.,* 825 F.Supp. 578, 583 (S.D.N.Y. 1993) (Conner, J.). Additionally, "the Court can consider documents referenced in the complaint and documents that are in the plaintiffs' possession or that the plaintiffs knew of and relied upon in their suit." *United States Fidelity and Guaranty Co. v. Petroleo Brasileiro,* No. 98 Civ. 3099, 2001 WL 300735, at *2 (S.D.N.Y. Mar. 27, 2001). On such a motion, the issue is "whether the claimant is entitled to offer evidence to support the claims." *Scheuer,* 416 U.S. at 236, 94 S.Ct. 1683. A complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Padavan v. United States,* 82 F.3d 23, 26 (2d Cir.1996) (*quoting Hughes v. Rowe,* 449 U.S. 5, 10, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980)). Generally, "[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." 2 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 12.34[1][b] (3d ed.1997); *see also Hirsch v. Arthur Andersen & Co.,* 72 F.3d 1085, 1088 (2d Cir.1995). Allegations that are so conclusory that they fail to give notice of the basic events and circumstances of which the plaintiff complains, are insufficient as a matter of law. *See Martin v. New York State Dep't of Mental Hygiene,* 588 F.2d 371, 372 (2d Cir.1978).

Dismissal of the Amended Complaint pursuant to Rule 12(b)(6) is inappropriate. In the Amended Complaint, plaintiff sufficiently states claims for design patent infringement. Plaintiff alleges

---

1. The facts underlying the instant action are laid out in *Metrokane I,* 160 F.Supp.2d at 635–36, and knowledge of these facts is assumed. The facts relevant to the instant motion are gleaned from the Amended Complaint and the moving papers.

2. Cisco's Insta–Pull corkscrew device is identical to the "Le Rapide" sold by defendant TWE. (Pl. Mem. Opp. Mot. Dismiss at 2 n. 1.)

that it owns two valid United States Patents (Am.Complt.¶¶ 66, 75), that defendant manufactured an infringing corkscrew with a design substantially the same as the patented designs (*Id.* ¶¶ 70, 79), and that the infringing corkscrew appropriates the novelty of the patented designs which distinguish them from the prior art. (*Id.* ¶¶ 71, 80.) Contrary to defendant's contention, plaintiff's allegations are not "conclusory", but are supported by facts, drawings and documents contained or incorporated by reference in the Amended Complaint. Therefore, the Court concludes that the Amended Complaint alleges facts sufficient to support a claim for design patent infringement, so that defendant's motion to dismiss must be denied.

### B. *Conversion to Rule 56 Motion Summary Judgment*

■ In the alternative, defendant requests that this Court convert the motion to one for summary judgment pursuant to Rule 56. In general, a district court should give parties notice of its intent to convert a motion to dismiss into a motion for summary judgment. *Green v. Doukas,* No. 99 Civ. 7733, 2000 WL 236471, at *2, 205 F.3d 1322 (2d Cir.2000). However, under certain circumstances, a court may convert a motion without giving explicit notice. *Id.* "The essential inquiry is whether the [opposing party] should reasonably have recognized the possibility that the motion might be converted to one for summary judgment or was taken by surprise and deprived of a reasonable opportunity to meet facts outside the pleading." *Id.* (quoting *In re G. & A. Books, Inc.,* 770 F.2d 288, 294–95 (2d Cir.1985)).

In the motion to dismiss, defendant makes an explicit request to this Court to convert the motion to one for summary judgment in the event that the Court finds dismissal under 12(b)(6) inappropriate. (Def. Mem. Supp. Mot. Dismiss at 1.) Plaintiff's direct response to this request (Pl. Mem. Opp. Mot. Dismiss at 4), and its subsequent argument opposing summary judgment (*Id.* at 4–7), show that plaintiff reasonably recognized that the motion might be converted to one for summary judgment. Furthermore, "[i]f both parties submit extrinsic material—or even if the moving party alone submits extrinsic material—the opposing party may be deemed to have adequate notice that the motion might be converted." *Green,* 2000 WL 236471, at *2, 205 F.3d 1322. In the instant action, plaintiff submitted an extensive expert report in opposition to defendant's motion. Because plaintiff had adequate notice of defendant's alternative motion, and presented evidence in response, *see, e.g., United States ex rel. Phipps v. Comprehensive Cmty. Dev. Corp.,* 152 F.Supp.2d 443, 449 n. 2 (S.D.N.Y.2001), the motion to dismiss will be converted to one for summary judgment pursuant to Rule 56.[3]

■ Summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The burden rests on the moving party to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S.

---

**3.** Although in *Metrokane I,* this Court refused to convert the motion to dismiss to one for summary judgment, the instant motion is distinguishable. First, this Court found that dismissal of the trade dress complaint in *Metrokane I* was appropriate under 12(b)(6), rendering summary judgment unnecessary. In addition, extrinsic evidence, including plaintiff's expert report, has been submitted and considered with respect to the instant motion.

317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Ticali v. Roman Catholic Diocese of Brooklyn*, 41 F.Supp.2d 249, 254 (E.D.N.Y.1999). A genuine factual issue exists if there is sufficient evidence favoring the nonmovant for a reasonable jury to return a verdict in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Ticali*, 41 F.Supp.2d at 254. In deciding whether summary judgment is appropriate, the court should resolve all ambiguities and draw all permissible factual inferences against the movant. *See Anderson*, 477 U.S. at 255, 106 S.Ct. 2505. Summary judgment is warranted when the nonmovant has no evidentiary support for an essential element on which it bears the burden of proof. *Celotex*, 477 U.S. at 322–23, 106 S.Ct. 2548; *Silver v. City Univ. of N.Y.*, 947 F.2d 1021, 1022 (2d Cir.1991).

The Court of Appeals for the Federal Circuit has repeatedly stated that, "summary judgment is as appropriate in a patent case as in any other." *Rockport Co. v. Deer Stags, Inc.*, 65 F.Supp.2d 189, 192 (S.D.N.Y.1999) (quoting *Avia Group Int'l, Inc. v. L.A. Gear Ca., Inc.*, 853 F.2d 1557, 1561 (Fed.Cir.1988)); *see also Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd.*, 731 F.2d 831, 835 (Fed.Cir. 1984); *Naso v. Ki Park*, 856 F.Supp. 201, 204 (S.D.N.Y.1994) (Conner, J.) (a summary judgment of non-infringement may be appropriate where there are no genuine issues of material fact). This applies to design patent as well as utility patent cases. *Avia*, 853 F.2d at 1561.

## II. *Design Patent Infringement*

 A design patent protects the non-functional aspects of an ornamental design as shown in the patent. *Elmer v. ICC Fabricating Inc.*, 67 F.3d 1571, 1577 (Fed.Cir.1995). Determining whether a design patent has been infringed involves a two-step analysis. First, the court must construe the patent claim to determine its meaning and scope as a matter of law. *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed.Cir.1995). Second, the properly construed patent claim must be compared to the accused design to determine whether it infringes the patent. *See Elmer*, 67 F.3d at 1577. In the second step, the patented and accused designs are compared to determine whether the accused design is substantially similar in appearance to the patented design. *Id.* In that comparison, "the fact-finder must [ ] consider whether the accused design appropriates the specific novel features of the patented design which distinguishes it from the prior art." *Hsin Ten Enter. USA, Inc. v. Clark Enters.*, 149 F.Supp.2d 60 (S.D.N.Y.2001) (citing *Sun Hill Indus., Inc. v. Easter Unlimited, Inc.*, 48 F.3d 1193, 1197 (Fed.Cir.1995)). "The patentee must prove both substantial similarity and appropriation of the 'point of novelty' for a successful infringement claim." *Id.*

### A. *Claim Construction*

 The construction of a patent claim is a matter of law. *Markman*, 52 F.3d at 977. When construing a design patent, "the process of claim construction 'must be adapted to the practice that a patented design is claimed as shown in its drawing. There is usually no description of the design in words.'" *Hsin Ten*, 149 F.Supp.2d at 63 (quoting *Goodyear Tire & Rubber Co. v. Hercules Tire & Rubber Co.*, 162 F.3d 1113, 1116 (Fed.Cir.1998)). "Design patents are limited to what is shown in the application drawings and are narrow in scope." *Id.* (citations omitted). Because a design patent only protects the novel, ornamental aspects of the design as shown in the patent, *Elmer*, 67 F.3d at 1577, a court must identify these aspects in order to construe the scope of protection of the

patent. *See Hsin Ten*, 149 F.Supp.2d at 63.

### 1. *The '265 Patent*

■ The '265 patent claim is "[t]he ornamental design for portion of cork extractor, as shown and described." (Am. Complt., Ex. 8.) The drawing highlights only a small portion of a lever-operated corkscrew device, namely an interior surface of the frame of the device which is flat and has the outline shape of an inverted mushroom with a "stem" having straight, parallel vertical sides and a "head" with a straight, horizontal bottom and a semicircular top. Two small circles representing screw heads appear in broken lines on opposite sides of the flat surface of the head, but the description of the patent states that they form no part of the claimed design. In determining the scope of the patent claim, the court must also exclude those elements that are merely functional. *See Hsin Ten*, 149 F.Supp.2d at 64.

■ After careful consideration, we conclude that this design has no purely ornamental features that merit patent protection. The outwardly facing surface of the part is flat, which is a logical choice for simplicity of manufacture. It is undecorated except for the two screw heads, which are disclaimed as part of the patented design. The narrow stem portion of the outline of the part is dictated by function. The resulting opposed recesses provide clearance for the inner ends of the plierslike handles which are pivotally supported on the frame and which grip the opposite sides of the mouth of a wine bottle and hold the device in position on the bottle as the corkscrew is driven down into the cork. The only remaining visual element of the design is the convex rounded head of the mushroom. This is not a distinctive or inventively decorative feature, but an obvious and mechanically practical choice from a limited number of alternative ways of shaping the lower end of the frame.

Moreover, this interior portion of the device is visible only when the user opens the pliers-like handles and looks between them to the inner surface of the frame. Thus is it not seen when the device is in the box and contributes nothing to its sales appeal. Indeed, when the device is used to remove the cork from a bottle and the handles are spread to place them around the mouth of the bottle, the user is almost invariably looking down on the device from above and the bottle between the inner portions of the handles blocks the line of sight into the lower interior of the frame where the part incorporating the patented design is located. Thus it is quite likely that the device could be used for years without the user ever seeing that part of the device. Even if it were ever seen, the design could not conceivably contribute to the overall visual attractiveness or appreciation of the device.[4]

It is quite revealing that plaintiff filed the applications for the two patents in suit only after plaintiff had seen defendant's accused device on the market and had acquired a specimen of it and, indeed, only a few days before the original Complaint in this action was filed. Plaintiff obviously scrutinized defendant's device for any

---

4. In some cases, a concealed feature of an article has been deemed patentable if the appearance, at some point, is a "matter of concern." *See KeyStone Retaining Wall Sys., Inc. v. Westrock, Inc.*, 997 F.2d 1444, 1451 (Fed. Cir.1993) (holding that all portions of a wall block were patentable even though not visible when incorporated into a wall). However, we do not discern how this normally concealed and aesthetically insignificant feature of the corkscrew could ever qualify as a "matter of concern." It obviously adds nothing to the marketability of the device or to enjoyment of its use.

points of visual similarity to its own commercial device, and focused the patent drawings on these narrow features, however inconsequential and little noticed they had been before. The design patent laws were established to encourage the decorative arts by providing temporally limited protection for meritorious ornamental designs. *See Application of Honeywell, Inc.,* 497 F.2d 1344, 1348 (Cust. & Pat.App. 1974). They were not intended to empower patent owners to harass competitors who are marketing devices which happen to incorporate parts whose shapes resemble insignificant physical details of the patent owner's products. This is apparently the game of "gotcha" which plaintiff is attempting to play in this case. This Court will not assist it in thus perverting the purpose of the design patent laws. Plaintiff's claim of infringement of the '265 patent is dismissed as a matter of law.

### 2. *The '045 patent*

■ The '045 patent claims "[t]he ornamental design for portion of cork extractor, as shown and described." (Am. Complt., Ex. 10 (emphasis added).) The drawing shows a design for the lateral surface of the upper portion of the frame of a lever-operated corkscrew. Patent protection is available for an ornamental design embodied in less than a complete article. *In re Zahn,* 617 F.2d 261 (Cust. & Pat.App 1980) (holding that a design embodied in a shank portion of a drill was patentable). "Section 171 authorizes patents on ornamental designs for articles of manufacture. While the design must be embodied in some articles, the statute is not limited to designs for complete articles, or 'discrete' articles, and certainly not to articles separately sold." *Id.* at 267. Because its features are ornamental, plaintiff may properly claim the design of the por-

tion of the corkscrew shown in the '045 patent claim. We must therefore determine whether the accused article infringes the '045 patent.

■ In the second part of the analysis for design patent infringement, the properly construed patent claim is compared to the accused design to determine whether there has been infringement. *See Rockport,* 65 F.Supp.2d at 193 (citing *Markman,* 52 F.3d at 976). In addition to appearing substantially similar to the patented design, the accused product must also "appropriate the novelty in the patented device which distinguishes it from the prior art." *Sun Hill,* 48 F.3d at 1197 (quoting *Litton Sys. Inc. v. Whirlpool Corp.,* 728 F.2d 1423, 1444 (Fed.Cir.1984)). Infringement must be measured against the patented design and not against a commercial embodiment that contains more than the claim. *Id.* at 1197. Because this is a motion for summary judgment, we need to decide only whether there is an issue of fact as to whether the accused corkscrew infringes the '045 patent. *See, e.g., Rockport,* 65 F.Supp.2d at 194.

■ The test for substantial similarity was stated more than a century ago by the Supreme Court in the case of *Gorham v. White,* 81 U.S. (14 Wall.) 511, 528, 20 L.Ed. 731 (1871):

> [I]f, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other.

The focus is on the overall ornamental appearance of the claimed design and not

on select ornamental features.[5] *Elmer*, 67 F.3d at 1578. A design need not be identical to the patented design for infringement to occur. *Braun Inc. v. Dynamics Corp. of America*, 975 F.2d 815, 820 (Fed.Cir. 1992).

██ As previously noted, plaintiff's commercial device is marketed under the trademark "Rabbit." Consistent with this allusion, the upper portion of its frame is designed to resemble the head of a rabbit, having at each side an egg-shaped bulge which is tilted so that the larger end of the oval, representing the nose of the rabbit, is higher than the smaller end, representing the back of the head. The operating handle, which moves the corkscrew upwardly and downwardly, projects rearward from the top of the "head" and is shaped to resemble a rabbit's ears. The operating handle is pivoted on a pin whose ends project through the head approximately at the center of the larger end of the oval, to suggest the eyes of the rabbit. The inwardly sloping underside of the egg-shaped bulge tapers gradually and merges smoothly into the vertically extending lateral surface of the lower portion of the frame to simulate the undefined transition from the head to the body of a thickly furred animal such as a rabbit.

The drawing of the '045 patent shows the entire device in broken lines, but there are dotted lines around and dotted shading within the egg-shaped bulge and a small flat, triangular projection adjoining its upper rear edge. The description specifies that the claimed design comprises only the portion within the dotted lines and that the remaining portions shown in broken lines represent only environmental subject matter that forms no part of the claimed design.

Defendant's accused device functions in the same way as plaintiff's device (as well as a number of prior art devices) and thus they all have an overall structural similarity. However, there are numerous differences in detail between them. As merely one example, the operating handles of plaintiff's and defendant's devices are entirely different in appearance, plaintiff's handle being round or elliptical in cross section throughout its length, while defendant's handle is generally rectangular throughout, with deep recessed areas near its pivoted end to give that portion of the handle the cross-sectional shape of an I beam.

The frame of defendant's device also has a generally egg-shaped bulge at each side, but these bulges are narrower in width and of lesser thickness than those of plaintiff's commercial device and those shown in the patent drawing. The bulges shown in the patent drawing are smoothly convex throughout, while the thinner bulges of defendant's device have at each side a prominent, outwardly projecting cylindrical boss. Thus this portion of defendant's frame does not suggest the head of a rabbit.

In plaintiff's commercial device, and in that shown in the patent drawing, the upper edge of the frame follows the curvature of the egg-shaped bulge and joins the upper edge of the triangular projection at a sharp angle. In contrast, the upper edge of defendant's device is substantially straight throughout most of its length but gradually merges with the upper edge of the triangular projection in a smooth curve. Interestingly, the triangular projection has the functional purpose of enclosing a portion of the inner mechanism of

**5.** When considering the overall appearance of the claimed design in the instant action, this Court focuses on the overall appearance of the specific portions claimed in the design patent and not the overall appearance of the entire article.

the device. It has no discernible decorative purpose and was apparently included within the shaded area covered by the patent claim only because defendant's device has a similar triangular projection.

Moreover, the underside of defendant's bulge adjoins the vertically extending lateral surface of the lower portion of the frame at a relatively sharply defined angle, rather than gradually and smoothly merging with that surface, as in plaintiff's commercial device. Quite revealingly, the shading of the patent drawing indicates a rather abrupt angular juncture between the two surfaces so that this portion of the drawing resembles defendant's device more than plaintiff's own device, further strongly suggesting that the patent drawing was made by an artist viewing defendant's product.

Nevertheless, because of the aforementioned differences between the upper portion of the frame of defendant's accused device and the patented design, the overall visual impressions they create are markedly different. There is no substantial likelihood that an ordinary observer would confuse the two designs, or recognize in defendant's device any rabbit symbolism. There is not the slightest evidence of an attempt by defendant to appropriate any purely decorative features of the patented design.

We believe no reasonable jury could conclude otherwise and accordingly grant summary judgment of non-infringement in favor of defendant on the '045 patent.

## CONCLUSION

For the foregoing reasons, this Court denies defendant's motion to dismiss and converts it to a motion for summary judgment. Defendant's converted motion for summary judgment is granted, and the claims of infringement of the '265 and '045 patents are dismissed with prejudice.