This Opinion is a Precedent
of the TTAB

Hearing: April 20, 2023 　　　　　　　　　　Mailed: January 4, 2024

UNITED STATES PATENT AND TRADEMARK OFFICE

_____

Trademark Trial and Appeal Board

_____

*In re Post Foods, LLC*

_____

Serial No. 88857834

_____

Matthew J. Himich of Thompson Coburn LLP for Post Foods, LLC.

Tasneem Hussain, Trademark Examining Attorney, Law Office 118,[1]
　　Michael Baird, Managing Attorney.

_____

Before Shaw, Adlin and Dunn,
　　Administrative Trademark Judges.

Opinion by Shaw, Administrative Trademark Judge:

　　Post Foods, LLC ("Applicant") seeks registration of the proposed mark, shown

below, on the Principal Register under Section 2(f) of the Trademark Act, 15 U.S.C.

§ 1052(f), for "breakfast cereals," in International Class 30:[2]

---

[1] Examining Attorney Jacob Vigil appeared for the Office at oral hearing.

[2] Application Serial No. 88857834 was filed on April 2, 2020 under Section 1(a) of the Trademark Act, 15 U.S.C. § 1051(a), alleging a date of first use anywhere and in commerce of November 30, 1973. The application as filed included a Section 2(f) claim of acquired distinctiveness.

　　All TTABVUE and Trademark Status and Document Retrieval ("TSDR") citations reference the docket and electronic file database for the involved application. All citations to the TSDR database are to the downloadable .PDF version of the documents.



The operative description of the proposed mark, as amended during prosecution, states:

> The mark consists of the colors of yellow, green, light blue, purple, orange, red and pink applied to the entire surface of crisp cereal pieces. The broken lines depicting the shape of the crisp cereal pieces indicate placement of the mark on the crisp cereal pieces and are not part of the mark.

The colors yellow, green, light blue, purple, orange, red and pink are claimed as a feature of the proposed mark.

The Trademark Examining Attorney finally refused registration of Applicant's proposed mark under Trademark Act Sections 1, 2 and 45, 15 U.S.C. §§ 1051, 1052 and 1127, on the ground that the proposed color mark fails to function as a trademark because it is not inherently distinctive and has not been shown to have acquired distinctiveness under Trademark Act Section 2(f).

When the refusal was made final, Applicant appealed. The case is fully briefed and an oral argument was held before a panel of the Board. We affirm the refusal to register.

## I.    Prosecution history

Applicant originally sought registration of trade dress comprising both the shape of Applicant's cereal as well as the colors identified above. The description of the mark as filed stated: "The mark consists of the product configuration of crisp cereal pieces in the colors of yellow, green, light blue, purple, orange, red and pink."[3] The drawing submitted with the application was simply a close-up picture of Applicant's breakfast cereal, as shown below.[4]



The application included a declaration from Applicant's counsel supporting the Section 2(f) claim through allegations of long use, extensive advertising, unsolicited media coverage, and significant product sales.[5]

The Examining Attorney refused registration of the proposed trade dress configuration under Trademark Act Sections 1, 2 and 45, 15 U.S.C. §§ 1051, 1052 and 1127, on the ground that the proposed mark failed to function as a trademark because

---

[3] Application of April 2, 2020, TSDR 1.

[4] *Id.* at 8.

[5] First declaration of Kiri Somermeyer, Associate General Counsel of Post Consumer Brands, with accompanying exhibits, Application of April 2, 2020, TSDR 8-44.

it consisted of "a nondistinctive product design or nondistinctive features of a product design that is not registrable on the Principal Register without sufficient proof of acquired distinctiveness."[6] The Examining Attorney further refused registration on the ground that Applicant's Section 2(f) showing was insufficient to demonstrate acquired distinctiveness.[7] In addition, the Examining Attorney issued, inter alia, a requirement under Trademark Rule 2.52(b)(2), 37 C.F.R. § 2.52(b)(2), for a substitute drawing depicting the configuration mark in a single three-dimensional view of the goods, showing in solid lines those features that applicant claims as its mark.[8]

Applicant responded to the first Office Action with additional evidence of the mark's acquired distinctiveness, including: the results of a consumer survey, long use of the mark, significant advertising expenditures and sales revenues, and extensive media coverage and customer statements.[9] Applicant declined to submit a substitute drawing, arguing that "[t]he photograph correctly shows the size and proportionality of the product and the nature of the applied for mark."[10]

In a second Office Action, the Examining Attorney maintained the outstanding refusals and requirements but issued an additional requirement for a disclaimer of "the depiction of the shape of the cereal flakes [apart] from the mark as shown,"

---

[6] July 14, 2020 Office Action, TSDR 1-2.

[7] *Id.* at 2.

[8] *Id.* at 3.

[9] Second and third declarations of Kiri Somermeyer with accompanying exhibits and a survey, Response to Office Action of January 13, 2021, TSDR 12-645.

[10] *Id.* at 11.

pursuant to Trademark Act Section 6(a), 15 U.S.C. § 1056(a).[11] In response, Applicant submitted an amended description of the mark which deleted any mention of a three-dimensional product configuration: "The mark consists of the colors of yellow, green, light blue, purple, orange, red and pink applied to crisp cereal pieces."[12] Applicant also disclaimed rights in the cereal shape: "No claim is made to the exclusive right to use the depiction of the shape of the cereal flakes apart from the mark as shown."[13]

Following Applicant's amendment of the mark description to remove the claim to the cereal shape, the Examining Attorney issued the present refusal of registration also under Trademark Act Sections 1, 2 and 45, 15 U.S.C. §§ 1051, 1052 and 1127, on the ground that the proposed color mark fails to function as a trademark because it is not inherently distinctive and has not been shown to have acquired distinctiveness under Section 2(f).[14] The Examining Attorney also continued the requirement for a new drawing and mark description, on the grounds that the shape of the cereal pieces are nondistinctive and incapable of functioning as a mark, and required deletion of the submitted disclaimer, because the mark description amendment mooted the disclaimer requirement.[15]

---

[11] February 10, 2021 Office Action, TSDR 1.

[12] April 13, 2021 Response to Office Action, TSDR 1.

[13] *Id.*

[14] November 4, 2021 Office Action, TSDR 1.

[15] *Id.*

In response to the new refusal, Applicant submitted further evidence of acquired distinctiveness, including the results of a second survey.[16] Additionally, Applicant submitted a new drawing depicting the operative proposed mark displayed above, showing the outline of the cereal pieces depicted in broken lines; amended the description of the mark to include a statement that "The broken lines depicting the shape of the crisp cereal pieces indicate placement of the mark on the crisp cereal pieces and are not part of the mark;" and deleted the disclaimer.[17]

Unpersuaded by Applicant's amendments, evidence and arguments, the Examining Attorney issued a final refusal under Trademark Act Sections 1, 2 and 45.[18] Applicant requested reconsideration of the refusal to register the mark, which was denied.[19]

## II.    Defining Applicant's claimed mark

Before addressing the merits of the refusal, "we first must define what Applicant intends to claim as a trademark," *Kohler Co. v. Honda Giken Kogyo K.K.*, 125 USPQ2d 1468, 1487 (TTAB 2017) (quoting *In re Heatcon, Inc.*, 116 USPQ2d 1366, 1371 (TTAB 2015)), because on appeal, Applicant and the Examining Attorney disagree about what comprises Applicant's proposed mark. "In defining the mark that Applicant seeks to register, we consider 'all elements, including those described in the

---

[16] Fourth and fifth declarations of Kiri Somermeyer with accompanying exhibits and a second survey, April 20, 2022 Response to Office Action, TSDR 12-637.

[17] *Id.*

[18] May 26, 2022 Final Office Action.

[19] July 26, 2022 Request for Reconsideration; July 27, 2022 Denial of Reconsideration.

application as well as those shown in the drawing page' but we are not bound by what Applicant describes its mark to be in its application or in its brief." *Id.* at 1488 n.48 (internal citations omitted).

Applicant argues that "the applied-for mark comprises the recited color combination as applied to the entire surface of crisp rice cereal pieces[.]"[20] Further, according to Applicant, the current drawing "shows the physical appearance of the crisp rice cereal pieces including their color, surface texture, and the general nature of the crisp rice cereal pieces."[21] Thus, according to Applicant, "the applied for mark is the *combination* of the recited color combination applied to crisp rice cereal pieces."[22]

The Examining Attorney disagrees and argues that Applicant's amended drawing displays a color-only mark without regard to the configuration of crisp rice cereal pieces:

> Applicant appropriately submitted an acceptable drawing of the mark with dotted lines to indicate no claims as to the configuration of the goods. Applicant's description of the mark explaining that the "broken lines depicting the shape of the crisp cereal pieces indicate placement of the mark on the crisp cereal pieces and are not part of the mark" confirms that the mark is a color mark.[23]

A drawing depicts the mark sought to be registered. Trademark Rule 2.52, 37 C.F.R. § 2.52. For color marks, the drawing must show the mark in color, the color

---

[20] Applicant's Br., p. 2, 4 TTABVUE 4.

[21] *Id.* at 2-3, 4 TTABVUE 4-5.

[22] *Id.* at 3, 4 TTABVUE 5.

[23] Examining Attorney's Br., pp. 3-4, 6 TTABVUE 3-4.

or colors must be named and described as to where they appear on the mark, and a claim must be included stating that the color or colors are a feature of the mark. Trademark Rule 2.52(b)(1), 37 C.F.R. § 2.52(b)(1). To adequately depict the commercial impression of marks that include a two or three-dimensional design, or color,

> [T]he applicant may be required to submit a drawing that shows the placement of the mark by surrounding the mark with a proportionately accurate broken-line representation of the particular goods, packaging, or advertising on which the mark appears. The applicant must also use broken lines to show any other matter not claimed as part of the mark. For any drawing using broken lines to indicate placement of the mark, or matter not claimed as part of the mark, the applicant must describe the mark and explain the purpose of the broken lines.

Trademark Rule 2.52(b)(4), 37 C.F.R. § 2.52(b)(4).

The crux of the matter is the interplay between the identified goods, the amended drawing, and the amended description of the mark. As noted above, Applicant's goods are simply identified as "breakfast cereals." The drawing purportedly shows the goods to be crisp rice cereal pieces, but they are shown in dotted lines, hence, they are not claimed as part of the mark. The description of the mark makes no mention of "crisp rice cereal pieces," but even if it did, we look to the identification of the goods, not the mark description, to define the scope of the goods for which registration is sought. When we consider the identification of goods, i.e., "breakfast cereals" generally, and the mark, which does not include the shape of the cereal pieces because they are shown in broken lines, we find that the proposed mark is a color-only mark applied

to any breakfast cereal—not, as Applicant claims, a combination of the listed colors as applied solely to crisp rice cereal pieces.

Applicant's oft-repeated argument that the goods are limited to "crisp **rice** cereal pieces"[24] is contradicted by the record. As noted above, the identification of goods identifies only "breakfast cereal," not "crisp **rice** breakfast cereals." Even the description of the mark identifies only "crisp cereal pieces," not "crisp **rice** cereal pieces." *Cf. Kohler*, 125 USPQ2d at 1488 n.48 (Board is "not bound by what Applicant describes its mark to be in its application or in its brief."). Although the drawing of the mark includes broken lines depicting the outline of the cereal pieces, as the description states, the lines indicate only "placement of the mark" on the cereal, i.e., the shape of the cereal is "matter not claimed as part of the mark." 37 C.F.R. § 2.52(b)(4). *See In re Famous Foods, Inc.*, 217 USPQ 177, 177 (TTAB 1983) ("Features which are not being claimed as part of applicant's asserted mark should be shown in dotted lines."). If Applicant wanted to limit its mark to use on "crisp rice breakfast cereals," it should have amended the identification of goods when it amended the drawing and the description to delete the configuration of the goods.

Regarding the shape of the goods, Applicant's argument that the current drawing is limited to "the physical appearance of the crisp rice cereal pieces including . . . the general nature of the crisp rice cereal pieces"[25] is unpersuasive as well. The drawing does not define the mark as more than color-only because the shape of the cereal

---

[24] Applicant's Br., p. 2, 4 TTABVUE 4. (Emphasis added).

[25] *Id.* at 2-3, 4 TTABVUE 4-5.

pieces is depicted in broken lines and not claimed as a feature of the mark. 37 C.F.R. § 2.52(b)(4). As explained above, the mark drawing and description identify a mark comprised of the colors yellow, green, light blue, purple, orange, red and pink applied to the surface of crisp cereal pieces, without regard to shape. Because the colors are claimed without any regard to shape, the mark encompasses the specified colors applied to any shape of "breakfast cereals."

Similarly, Applicant's argument that the "surface texture" of the cereal shown in the amended drawing is limited to "crisp rice cereal pieces" [26] is belied by the fact that other crisp cereal types appear to have the same texture.[27]

In sum, we find that the proposed mark—as defined by the drawing and the description of the mark—and taking into account the identification of the goods, comprises a combination of colors that may be applied to any crisp breakfast cereal, regardless of the shape of the cereal pieces. Accordingly, we consider the evidence of record as it relates to the identified colors only, without regard to the shape of the cereal.

### III.    Failure to function as a mark

Section 45 of the Trademark Act defines a "trademark" as "any word, name, symbol, or device, or any combination thereof – (1) used by a person . . . to identify and distinguish his or her goods . . . from those manufactured or sold by others and

---

[26] *Id.* at 3, 4 TTABVUE 5.

[27] *See, e.g.*, the "multi-color ring-like cereal product" in Applicant's second survey. April 20, 2022 Response to Office Action, TSDR 52.

to indicate the source of the goods, even if that source is unknown." 15 U.S.C. § 1127. Trade dress constitutes a "symbol" or "device" by which the goods of the applicant may be distinguished from the goods of others. *Wal-Mart Stores, Inc. v. Samara Bros.,* 529 U.S. 205, 54 USPQ2d 1065, 1067 (2000). Trade dress "involves the total image of a product and may include features such as size, shape, color or color combinations, texture, graphics, or even particular sales techniques." *Elmer v. ICC Fabricating, Inc.*, 67 F.3d 1571, 36 USPQ2d 1417, 1421 (Fed. Cir. 1995) (internal quotations and citation omitted). Thus, color is a type of trade dress that is registrable as a trademark only if it serves the same source-identifying function as a trademark. *See Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 34 USPQ2d 1161, 1164 (1995) ("[C]olor alone, at least sometimes, can meet the basic legal requirements for use as a trademark. It can act as a symbol that distinguishes a firm's goods and identifies their source[.]").

Color marks are never inherently distinctive when used on products or product designs. *Wal-Mart Stores,* 54 USPQ2d at 1068 ("[W]ith respect to at least one category of mark—colors—we have held that no mark can ever be inherently distinctive.") (citing *Qualitex*, 34 USPQ2d at 1162-63). Because there is no allegation or evidence that the proposed color mark is functional, it may be registrable on the Principal Register if it is shown to have acquired distinctiveness under Section 2(f). *Cf. TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 58 USPQ2d 1001, 1006 (2001) (product features that are functional cannot serve as trademarks if they are essential

to the use or purpose, or affect the cost or quality, of the goods). As noted above, Applicant seeks registration under Section 2(f).[28]

The burden of proving that a color mark has acquired distinctiveness is substantial. *See In re Owens-Corning Fiberglas Corp.*, 774 F.2d 1116, 227 USPQ 417, 424 (Fed. Cir. 1985) ("By their nature color marks carry a difficult burden in demonstrating distinctiveness and trademark character."). As explained by the Federal Circuit:

> [T]he considerations to be assessed in determining whether a mark has acquired secondary meaning[29] can be described by the following six factors: (1) association of the trade dress with a particular source by actual purchasers (typically measured by customer surveys); (2) length, degree, and exclusivity of use; (3) amount and manner of advertising; (4) amount of sales and number of customers; (5) intentional copying; and (6) unsolicited media coverage of the product embodying the mark.

*Converse, Inc. v. Int'l Trade Comm'n*, 909 F.3d 1110, 128 USPQ2d 1538, 1546 (Fed. Cir. 2018). No single factor is determinative and "[a]ll six factors are to be weighed together in determining the existence of secondary meaning." *In re Guaranteed Rate,*

---

[28] Applicant's reliance on Section 2(f) throughout the prosecution of the application is an admission that the proposed mark is not inherently distinctive. *In re RiseSmart Inc.*, 104 USPQ2d 1931, 1932 (TTAB 2012) ("[A]mendment to seek registration under Section 2(f) of the Trademark Act is considered an admission that the proposed mark is not inherently distinctive."); *see also Yamaha Int'l Corp. v. Hoshino Gakki Co.*, 840 F.2d 1572, 6 USPQ2d 1001, 1005 (Fed. Cir. 1988) ("Where, as here, an applicant seeks a registration based on acquired distinctiveness under Section 2(f), the statute accepts a lack of inherent distinctiveness as an established fact.").

[29] "Acquired distinctiveness is commonly referred to as 'secondary meaning.'" *In re Forney Indus., Inc.*, 955 F.3d 940, 2020 USPQ2d 10310 (Fed. Cir. 2020).

*Inc.*, 2020 USPQ2d 10869, at *3 (TTAB 2020) (quoting *Converse*, 128 USPQ2d at 1546).

## A. Evidence of record

The Examining Attorney submitted the following evidence to support the refusal to register on the grounds that the mark is not inherently distinctive and to rebut Applicant's evidence of acquired distinctiveness:

1. Examples of third-party multicolored cereals in the form of puffed rice, balls, ring shapes, and other shapes; [30]

2. Lexis-Nexis printouts of seven articles discussing "rainbow" colored cereals;[31] and

3. Online articles from Mashed.com and MeTV.com, discussing the color evolution of Fruity Pebbles, from three colors in 1973 to seven colors presently.[32]

Applicant submitted five declarations by Kiri Somermeyer with accompanying evidence providing product history, length of use, product pictures, product packaging, advertising samples, sales volume and revenues, advertising expenditures, unsolicited third-party references, and two consumer-recognition surveys.[33]

---

[30] November 4, 2021 Office Action, TSDR 9-14; May 26, 2022 Office Action, TSDR 8-17.

[31] July 27, 2022 Office Action, TSDR 4-26.

[32] November 4, 2021 Office Action, TSDR 15-16, 19.

[33] Application of April 2, 2020, TSDR 9-50; January 13, 2021 Response to Office Action, TSDR 44-677; April 20, 2022 Response to Office Action, TSDR 42-667.

### B. Analysis

As discussed above, Applicant's proposed mark comprises the colors yellow, green, light blue, purple, orange, red and pink applied to the entire surface of breakfast cereal pieces, regardless of shape. The Examining Attorney argues that "Applicant's use of all the colors on 'breakfast cereals' is not 'substantially exclusive' or consistent which is fatal to applicant's claim [of acquired distinctiveness]. Consumers would not view multicolored cereals as pointing to applicant alone when so many other cereal manufacturers sell cereals in multiple colors."[34] For support, the Examining Attorney introduced pictures of the following cereal boxes that show similar multicolor cereal combinations, including some for crisp rice cereals, as well as on diverse shapes:[35]

1. Cap'n Crunch's OOPS! All Berries corn and oat cereal



2. Froot Loops cereal



---

[34] Examining Attorney's Br., p. 7, 6 TTABVUE 7.

[35] November 4, 2021 Office Action, TSDR pages 8-14; May 26, 2022 Final Office Action, TSDR pages 8-17.

3. Trix Fruity Shapes cereal



4. Cascadian Farm Organic Fruitful O's corn and oat cereal



5. Trader Joe's Fruity O's cereal



6. Best Choice Frosted Berry O's multigrain cereal



7. Best Choice Fruity Crisp Rice cereal



8. Wegmans Fruity Rice Crisps cereal



9. Wegmans Frosted Fruit O's cereal



10. Kroger Fruity Crisp rice cereal



11. Kroger Crisp Berry Crunch Corn & Oat cereal



12. Hill Country Fare Fruit & Frosted Rings multigrain cereal



13. Hill Country Fare Fruit Rageous rice cereal



14. Food Club Fruity Jewels rice cereal



15. Clover Valley Fruity Bites rice cereal



The Examining Attorney also introduced Lexis-Nexis printouts of articles and recipes discussing "rainbow" colored cereals in a manner which further supports the finding that consumers are used to seeing multicolored breakfast cereal offered by different sources and do not attribute multicolored cereal to one source. The following examples are most relevant:[36]

1. An article from *The Oregonian* reviewing a children's TV show which is described as "mercifully free of both MTV hype and commercials for **rainbow-hued cereal** that tastes like bubblegum;"

2. A "Rainbow Fish" crusted-fish recipe for children from the *Saint Paul Pioneer Press* incorporating "2 cups fruit-flavored, **rainbow-colored cereal**, such as Froot Loops, Fruity Pebbles or Trix;"

3. An ice cream parlor review in the *Fort Worth Star-Telegram* noting that the store will sell seasonal ice cream flavors that "range from Parker County peach, tropical berry sorbet, and **rainbow cereal**;"

---

[36] July 27, 2022 Office Action, TSDR 4-26 (emphasis added).

4.  A cereal review in *The Daily American* discussing the expected popularity of Sour Patch Kid's cereal, and noting that "the candy will be turned into **rainbow-colored cereal pieces** that my girls and everyone's kids recognize;" and

5.  An article in the *Aberdeen American News* discussing the use of food dyes in processed foods "[l]ike bright orange mac & cheese and **rainbow-hued cereal**."

We find the foregoing evidence establishes that consumers encounter numerous examples of multicolored breakfast cereals in a variety of shapes, including crisp rice cereal pieces such as Applicant's. The evidence contradicts Applicant's claim that its use of the claimed colors is substantially exclusive, and increases Applicant's burden to establish that the claimed colors have acquired distinctiveness and identify a single source of breakfast cereals. *See In re Howard S. Leight & Assocs. Inc.*, 39 USPQ2d 1058, 1060 (TTAB 1996) ("Where the use of colors is common in a field, an applicant has a difficult burden in demonstrating distinctiveness of its claimed color."). Moreover, Applicant concedes the principle that "third party use of multiple colors on the same goods calls into question the ability of the colors to identify a single source."[37] "When the record shows that purchasers are confronted with more than one (let alone numerous) independent users of a term or device, an application for registration under Section 2(f) cannot be successful, for distinctiveness on which purchasers may rely is lacking under such circumstances." *Levi Strauss & Co. v.*

---

[37] Applicant's Reply Br., p. 8, 7 TTABVUE 9.

*Genesco, Inc.*, 742 F.2d 1401, 222 USPQ 939, 940-41 (Fed. Cir. 1984); *ERBE Elektromedizin GmbH v. Canady Tech. LLC*, 629 F.3d 1278, 97 USPQ2d 1048, 1057-58 & nn.4 & 5 (Fed. Cir. 2010) (where a competitor also used the color blue for its competing products, plaintiff could not show the required exclusive use of the color blue that was required to demonstrate secondary meaning); *In re Guaranteed Rate, Inc.,* 2020 USPQ2d 10869, at \*7 (TTAB 2020) ("The copious evidence of third-party use of 'guaranteed rate,' 'guaranteed mortgage rate,' and 'guaranteed interest rate' in connection with mortgage lending services weighs heavily against Applicant's claim of acquired distinctiveness.").

Turning to Applicant's evidence, we note Applicant's submission of extensive evidence relating to its long use of the claimed colors on its Fruity Pebbles crisp rice cereals. But the breadth of Applicant's identification of "breakfast cereals," without limitation, creates a mismatch between Applicant's evidence—relating to both the color and shape of Applicant's goods—and the burden of proving that the proposed mark has acquired distinctiveness. We must consider the registrability of Applicant's proposed mark as used on all breakfast cereals, not just "crisp rice breakfast cereals." *Octocom Sys., Inc. v. Hous. Comput. Servs. Inc.*, 918 F.2d 937, 16 USPQ2d 1783, 1787 (Fed. Cir. 1990) ("The authority is legion that the question of registrability of an applicant's mark must be decided on the basis of the identification of goods set forth in the application regardless of what the record may reveal as to the particular nature of an applicant's goods").

Simply put, Applicant's extensive evidentiary showing relating to consumer recognition of its cereal's color, shape, and texture misses the mark. We agree with the Examining Attorney that "[m]uch of applicant's arguments rely upon evidence that hinges on both configuration and color but this application is only for a color mark. Applicant cannot rely upon evidence that conflates color and configuration to support its Section 2(f) claim."[38]

For example, we recognize Applicant "began using the applied-for mark in connection with breakfast cereals at least as early as November 1973, and has made considerable sales of its products sold under this mark since then."[39] But long use, extensive sales and advertising, and even unsolicited media attention regarding Applicant's use of the mark on crisp rice cereal pieces cannot establish Applicant's use of the claimed colors is sufficient to show that relevant consumers associate the colors with applicant alone for any and all "breakfast cereals," as required by Section 2(f). *See, e.g.*, *In re Benetton Grp. S.p.A.*, 48 USPQ2d 1214, 1216-17 (TTAB 1998) (despite long use, record devoid of any evidence that the green rectangular background design has been used, promoted, or advertised as a mark).

Similarly, Applicant's two surveys measure a much narrower mark—the colors in Applicant's mark as applied to only one type of breakfast cereal—than the actual mark, which is a color mark applied to all types of breakfast cereals. As the Examining Attorney notes, "the survey evidence is flawed as it does not focus on the

---

[38] Examining Attorney's Br., p. 7, 6 TTABVUE 7.

[39] Applicant's Br., p. 7, 4 TTABVUE 9; First Somermeyer Declaration, Application of April 2, 2020, ¶ 4, TSDR 15.

color alone."[40] The first survey, conducted when Applicant still claimed the configuration of the cereal pieces and the colors as the mark, assessed whether participants could identify plain crisp rice cereal pieces and Applicant's Fruity Pebbles-colored crisp rice cereal pieces.[41] Because it was limited to consumer perception of the color mark applied to the configuration of crisp rice cereal pieces, this survey does not provide any evidence that the claimed colors have acquired distinctiveness for the identified goods, that is, all breakfast cereals, including other non-crisp rice cereals in other shapes.

Applicant's second consumer survey likewise fails to show acquired distinctiveness for the identified goods. The survey included Applicant's cereal as well as multicolored toroidal or "ring-like cereal pieces" as a control,[42] but the "ring-like cereal pieces" are not properly a control. As explained above, the mark claims rights to the color applied to any breakfast cereal shape, including ring-like breakfast cereals. Moreover, the results of this survey undercut Applicant's claim of acquired distinctiveness. Rather than indicating that consumers associate any shape of multicolored cereal pieces with Applicant, the vast majority of respondents (89.3%) correctly identified the multicolored, ring-like cereal pieces as being one of the third-party cereals identified above.[43] Given that Applicant's proposed mark encompasses

---

[40] Examining Attorney's Br., p. 7, 6 TTABVUE 12.

[41] January 13, 2021 Response to Office Action, Second Somermeyer Declaration, ¶¶ 5, 6, TSDR 13.

[42] April 20, 2022 Response to Office Action, Fourth Somermeyer Declaration, ¶¶ 5, 6, TSDR 43, 52, 55.

[43] *Id.* at 44-45.

all breakfast cereal shapes, including ring-like shapes, this survey does not show that consumers associate the claimed colors on breakfast cereals with a single source. Accordingly, we cannot find that these surveys establish that the seven claimed colors have acquired distinctiveness as a trademark for breakfast cereals.

For the foregoing reasons, we affirm the refusal to register the proposed color mark on the ground that it is not inherently distinctive, has not acquired distinctiveness under Section 2(f), and, therefore, does not function as a trademark under §§ 1, 2, and 45 of the Trademark Act, 15 U.S.C. §§ 1051, 1052, and 1127.

**Decision**: The refusal to register Applicant's proposed mark on the ground that it fails to function as a trademark because it is not inherently distinctive and has not acquired distinctiveness is affirmed.